LANSING and others *against* VISCHER and others.

ON the 22d of *April*, 1808, a judgment in partition was perfected and docketed in this cause, against *Vischer* and two others, by which a part of certain lands were adjudged in severalty to *Vischer* the defendant and two others, and their shares of the costs were adjudged to the plaintiffs, to be levied and made of their shares of the lands respectively. In *May* or *June* last, with *Vischer's* consent, a *fi. fa.* issued for the costs, upon which the share of *Vischer* was levied upon, and advertised for sale. About the time of the partition, *Vischer* contracted in writing and for a valuable consideration, to sell his share to one *Randall*, who had notice of the *lien* and agreed to pay these costs—in 1809, *Randall* assigned this contract to *Rosevelt*, for a valuable consideration, paid. In *August* last, *Vischer* conveyed these lands to *Rosevelt*.

*Hopkins*, on an affidavit of *Rosevelt*, that at the time of his contract with *Randall* and paying the consideration therefor, he had no notice that the premises were subject to a *lien* for the costs, moved to set aside the *fi . fa.* on the ground that this judgment had ceased to be a *lien*, within the *first proviso* of the *first section* of the *act concerning judgments and executions*,(1 R. L. 500,) 10 years having elapsed between the time of entering judgment and issuing the execution.

*S. S. Lush*, contra, insisted, that the execution having issued before the *conveyance*, the judgment and execution at that time being known to *Rosevelt*, he was not a *bona fide* purchaser, within the statute and was, therefore, not protected by it.

*Per Curiam.* The *lien* is gone. *Rosevelt* purchased for

A judgment for costs in partition, is within the first proviso of the first section of the act concerning judgments and executions, and is a lien on the land for 10 years only. Where a defendant in partition, made a written agreement to sell his share to R, who had notice of the lien, and agreed to pay the costs ; and R. afterwards assigned the contract to another, for a valuable consideration, without notice of the lien, no execution having issued within 10 years after the judgment, it was held that the assignee was a *bona fide* purchaser, and protected against the judgment, although he did not actually get a deed from the defendant, until after execution issued.

ALBANY,
October, 1823.

PRINGLE
v.
HUSE.

a valuable consideration without notice, and ʼs a *bona fide* purchaser, within the meaning of the act.

Motion granted.

## PRINGLE *against* HUSE.

<div style="float:left;width:30%">

On the trial of a juror, upon a challenge by the plaintiff, for having expressed an opinion in favour of the defendant, the juror challenged may be called as a witness by the defendant.

Where it appears probable, that the plaintiff cannot have a trial by an impartial jury, he may refuse going to trial, and will not, for that cause, be nonsuited.

Thus, if in the course of drawing a jury at the circuit, he discovers that the box, having been left open by the clerk, the ballots therein have been arranged with

</div>

THIS cause was noticed for trial at the last *Otsego* Circuit and on the 18*th* day of *September* last, was called in its place on the calendar and was moved for trial on the morning of the 19*th*. The plaintiff challenged the first juror drawn, *to the favour*, on the ground that he had expressed an opinion in the cause against the plaintiff, after he had been summoned as a juror. Two other jurors were then drawn, and not being challenged, they sat without objection as *triors* of the challenge to the first. Two witnesses were sworn and examined before them on the issue upon the challenge. One of these witnesses was the juror challenged, who was offered by the defendant and objected to by the plaintiff as incompetent, but the objection was overruled by the Judge. The plaintiff's witness proved the declaration imputed to the juror, which the latter denied, and the *triors* found him free from all bias, and he took his seat in the box with the other two jurors. When the clerk began to draw the jury, he did it out of an open box, and drew the first juror and the *triors* out of the box thus open. Just before the decision of the *triors*, one of the plaintiff's counsel looked into the box, and stated to the Court, as was the fact, that the ballots in the bottom of the box lay in one direction—that 8 or 9 ballots, not folded, nor rolled up, but

apparent design to procure the drawing of a favourable jury, with other suspicious circumstances, he may withdraw his record, and on motion for judgment, as in case of nonsuit, will be excused from paying costs.

A challenge of a juror, for having given an opinion, is a principal one, and should be tried by the court.

It is, in general, highly improper for jurors, after they are summoned, to express opinions in causes which may come before them.

It is improper for the clerk of the circuit to leave the ballots unrolled, in an open box, or to draw them in this situation.