KOMP (WILCOX v.). See Case No. 17,641.

## Case No. 7,924.

KONING v. BAYARD, Jr., et al.

[2 Paine, 251; 2 U. S. Law Int. 34.] [1]

Circuit Court, S. D. New York. Nov. 19, 1829.

COURTS — RULES AS TO DOCKETING JUDGMENTS — CLERKS OF COURT — FORM OF WRITS AND EXECUTIONS—MODES OF PROCESS—LIEN OF FEDERAL COURT—JUDGMENT ON LAND — EFFECT IN NEW YORK OF DOCKETING.

1. This court, under the power given by the 17th section of the judiciary act of 1789 [1 Stat. 83], and the 7th section of the act of 1792 [1 Stat. 275], has authority to make rules relative to the signing, filing and docketing of judgments. Such matters relate to the practice of the court, which the court may regulate according to its own pleasure, provided it be not repugnant to the laws of the United States. Nor has it ever been

1 [Reported by Elijah Paine, Jr., Esq.]

understood that such practice could be shown only by written rules. If it has existed for a series of years. it is to be presumed that it has been established under the order of the court.

2. A regular docket of all judgments in this court having been kept for a period of more than thirty years. in the manner required by the act of 1787. to be kept by the clerks of the state courts, such unbroken practice is sufficient to warrant the conclusion that it was adopted by order of the court.

3. By the process act of congress of 1789 [1 Stat. 93], it is declared, that until further provision is made. and except where, by that act, or other statutes of the United States, it was otherwise provided, the forms of writs and executions, except their style, and the modes of process in the circuit and district courts, in suits at common law, should be the same in each state respectively as were then used or allowed in the supreme courts of the same. The act of 1792 contains substantially the same directions.

4. The expression. modes of process, used in these acts. indicate the progressive course of the business in a cause from its commencement to its termination. and applies to proceedings which take place after judgment as well as before, down to the satisfaction of the judgment, including the conduct of the officer in the execution of the process; and this is to conform to the law of the state as it existed in September. 1789. By these acts congress adopted both the form and effect of execution as established by the state laws in 1789,

5. Therefore. the lien created by judgments in the circuit courts of the United States upon land, and the mode of proceeding to obtain satisfaction of the judgments, are regulated by the state laws.
[Cited in Heckscher v. Binney, Case No. 6,316; Lombard v. Bayard, Id. 8,469; Ludlow v. Clinton Line R. Co., Id. 8,600.]

6. The 7th section of the act of New York, of the 19th of April. 1787, directs that the execution shall, in the first place, command the sheriff to take the goods and chattels of the defendant; and if sufficient cannot be found, then to make the debt and damages out of the lands and tenements whereof the defendant was seized on the day when such lands became liable to such debt, which is the day on which the judgment was docketed; and this is its effect which congress adopted by the process acts of 1789, 1792.

7. The declaration in the act of New York. of March 19th. 1787, that no judgment shall affect land but upon the filing of the roll and docketing the judgment, necessarily implies that upon that being done it shall affect the lands. and is equivalent to saying it shall then become a lien.
[Cited in U. S. v. Babbit, 1 Black (66 U. S.) 61.]

8. Lands in the state of New York may be taken and sold on execution issued upon a judgment in the circuit court of the United States, and such judgment is a lien on the lands on the day it is docketed.

[This was a scire facias by William Koning against William Bayard, Jr., and others, to revive judgment against William Bayard, deceased, and for execution on the lands and tenements of said William Bayard, deceased. William Renwick, terre tenant, pleads specially. The case is now heard on demurrer to plea.]

THOMPSON, Circuit Justice. This case comes before the court on a general demurrer to the plea, to a scire facias issued in the cause to revive the judgment and obtain execution thereon. The scire facias prays execution to be levied on the lands and tenements which were of William Bayard, deceased, on the 20th day of September, in the year 1825, being the day on which the judgment against him was docketed. To this scire facias William Renwick, one of the terre-tenants, pleaded that after the judgment was given, and before any execution had been issued thereon, the executors of William Bayard, deceased, by virtue of a power given to them by his will, had conveyed to him the lands of which he was returned terre-tenant for a valuable consideration, and without notice of the judgment, and insisting on this conveyance as a bar to the execution prayed for. To which plea a general demurrer was interposed. Under this state of the pleadings, the general questions which have been raised and discussed at the bar are whether, in the state of New York, lands may be taken and sold on execution issued upon a judgment in the circuit court of the United States; and if so, whether such judgment is a lien upon the land, and from what time, as against bona fide purchasers.

The first question was not much pressed, and indeed the plea is not framed so as properly to raise this objection, but rests upon the allegation that the purchase was made after the judgment and before execution issued. An admission, however, that lands may be taken and sold under a judgment in the courts of the United States, has a material bearing upon the other questions. For, it may be asked by what authority are they made liable? There is no act of congress expressly making lands liable to such execution; and if liable at all, it must grow out of the operation of what are commonly called the process acts of 1789 and 1792 (2 Bior. & D. Laws, 72, 299 [1 Stat. 93, 275]), thereby adopting the state law upon the subject. And if the state law is adopted for this purpose, it is difficult to assign any satisfactory reason why it is not adopted as to the effect and operation of the judgment as a lien. But the material inquiry is, whether the judgment became a lien upon the land from the time of its being docketed, so as to overreach a subsequent bona fide sale.

It has been said, that if the process acts should be deemed to have adopted the state law in relation to judgments. it must be the law as it existed in the year 1789, and must be governed by the statute of this state, of the 19th March, 1787 (2 Bior. & D. Laws, Jones & V. Ed., 113), and which is supposed to differ from the present law on that subject. But I apprehend the distinction which has been taken is not well founded. There is some small variation in the phraseology, but not such as to affect the sense and meaning of the laws. By the present law the judgment is expressly declared to be a lien upon the lands, tenements and real estate of the person against whom the judgment is recovered. By the act of 1787, there is

no such express lien created, but it is necessarily implied; and in the revision of the laws in 1813, the phraseology is altered, expressing only what was before necessarily implied, and it has never been understood that it made any difference in the interpretation of the law. By the act of 1787, all the lands, tenements and real estate of the debtor are expressly made liable to be sold on execution, and it declares that no judgment shall affect any lands or tenements as to purchasers or mortgagees, or have any preference against heirs, executors or administrators, in their administration, but from the time of the actual filing of the roll or record of the same judgment in the clerk's office, and the docketing the judgment by the clerk, in the manner directed by the act. The declaration, that no judgment shall affect lands but upon the filing the roll and docketing the judgment, necessarily implies that upon that being done, it shall affect the lands, and is equivalent to saying it shall then become a lien.

But it is said, that if the judgment becomes a lien on the lands upon the docketing of the judgment, there is no act of congress authorizing or requiring such docketing. Nor is there any rule of this court which directs the signing and filing the judgment, nor the docketing of judgments; so that the executions upon judgments in this court cannot direct a levy upon any lands, except such as are owned by the defendant at the time of issuing the execution.

The answer to the first branch of the objection will depend upon the question (which will be hereafter considered) how far congress, by the process acts, has adopted the state law in this respect. The second branch of the objections seems to imply, that an express written rule of the court must be shown, in order to justify the practice of docketing judgments. There can be no doubt but the court would have authority to make such a rule under the power given by the seventeenth section of the judiciary act of 1789, and the seventh section of the act of 1792. It was a matter relating to the practice of the court which the court might regulate according to its own pleasure, provided it was not repugnant to the laws of the United States; and it never has been understood that such practice could be shown only by written rules. If the practice has existed for a series of years, it is to be presumed that it has been established under the order of the court. This was the view taken of this question by the supreme court, in the case of Fullerton v. Bank of U. S., 1 Pet. [26 U. S.] 612. In speaking of the rules of the circuit court for the state of Ohio, it is said, when this circuit was established in the year 1807, the judge assigned to it found the practice of the state courts adopted in fact into the circuit court of the United States, and it

has not been deemed necessary to make any material alterations since; but as far as it was found practicable and convenient, the state practice has, by uniform understanding, been pursued by the circuit court, without having passed any positive rules upon the subject. A regular docket of all judgments in this court has been kept by the clerk, from the year 1795 to the present time, in the manner required by the act of 1787, to be kept by the clerks of the state courts. Such unbroken practice for more than thirty years, is amply sufficient to warrant the conclusion that it was adopted by order of the court.

It seems to have been tacitly admitted, in cases which have arisen in several of the circuit courts of the United States, that the lien created by a judgment in the courts of the United States upon land, and the mode of proceeding to obtain satisfaction of the judgment, were regulated entirely by state laws. In the case of Hurst v. Hurst [Case No. 6,931], in the Pennsylvania circuit, the question was as to the distribution of certain moneys (brought into court) among judgment creditors. Some of the judgments were recovered in the state courts, and some in the courts of the United States; and throughout the whole argument at the bar, and in the opinion of the court, there is no intimation but that the lien under the judgments in the United States courts was to be considered precisely as if obtained in the state courts; and it is expressly stated by the court to be a case arising out of a state law. So, also, in the case of U. S. v. Slade [Id. 16,312], in the circuit court for Massachusetts, the United States claimed title under a judgment recovered in the district court of Massachusetts, and the question turned upon the validity of the levy and setting off the lands upon the execution issued upon that judgment; and in considering and deciding upon the objections, the court was governed entirely by the state law of 1784.

And in the case of Thelusson v. Smith, 2 Wheat. [15 U. S.] 397, in the supreme court of the United States, the question grew out of a judgment recovered in the circuit court for the district of Pennsylvania, and no suggestion was made at the bar or from the bench that the judgment was not a lien upon the debtor's land; but, on the contrary, a general observation is made by the court, that a judgment gives to the judgment creditor a lien on the debtor's lands, and a preference over all subsequent judgment creditors. And when some explanation of this case is made in Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 443, the court say, it is not understood that a general lien by judgment on land, constitutes per se a property or right in the land itself; it only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, the title of the

creditor for this purpose relates back to the time of the judgment, so as to cut out intermediate incumbrances.

It is true that in these cases the question whether judgments in the United States courts were liens on land or not, was not the point directly decided, but it seemed to be taken for granted, both by the counsel and the court, that they were. But if any doubt existed on this point, the question is put at rest by the decision of the supreme court in the cases of Wayman v. Southard [10 Wheat. (23 U. S.) 1] and U. S. Bank v. Halstead [10 Wheat. (23 U. S.) 51]. In these cases, the court went into a very full explanation and construction of the process acts of congress, which have been already referred to. By the first act of 1789, it is declared, that until further provision is made, and except where by this act or other statutes of the United States is otherwise provided, the forms of writs and executions, except their style, and modes of process in the circuit and district courts, in suits at common law, shall be the same in each state respectively as are now used or allowed in the supreme courts of the same. The act of 1792 contains substantially the same directions with respect to the forms of writs, executions and other process, and the forms and modes of proceeding, &c., in the circuit and district courts, with the following addition: "Subject, however, to such alterations and additions as the said courts respectively shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule to prescribe, to any circuit or district court concerning the same."

The court say, that the word "form" as used in these acts, has much of substance in it, because it consists of the language of the writ, which specifies precisely what the officer is to do. His duty is prescribed in the writ, and he has only to obey its mandate so far as respects the object to be accomplished: that modes of process or proceeding indicate the progressive course of the business in a cause, from its commencement to its termination, and applies to proceedings which take place after judgment as well as before, down to the satisfaction of the judgment, including the conduct of the officer in the execution of the process; and this is to conform to the law of the state as it existed in September, 1789. The act adopts the state law as it then stood, not as it might afterwards be made: that congress intended to legislate as well upon the effect as the form of executions issued upon judgments recovered in the courts of the United States: that when, by the state law, lands were liable to be taken and sold on executions from the state courts, they were equally liable on executions issued from the courts of the United States.

These cases very clearly and fully declare that congress adopted both the form and effect of executions, as established by the state laws in the year 1789. What was that form

and effect in this state at that time? This will depend upon the act of the 19th of April, 1787, which has been referred to. The 7th section of that act directs what the execution shall contain; it, in the first place, commands the sheriff to take the goods and chattels of the defendant, and if sufficient cannot be found, then to make the debt and damages out of the land and tenements whereof the defendant was seized, on the day when such lands became liable to such debt; and it requires that day to be particularly specified in the execution, which is always the day on which the judgment was docketed. The execution, therefore, extends to, and operates upon all the lands of which the defendant was seized on that day. And this is its effect, which, according to the cases referred to, congress has adopted by the process acts of 1789 and 1792.

The judgment, therefore, in this case, became a lien on the lands in question, on the day it was docketed. And the matter set up in the defendants' plea, is no bar to the issuing of an execution against the lands in question. The plaintiff is, accordingly, entitled to judgment upon the demurrer.

NOTE. A vendee of lands, having obtained his deed, was subsequently notified of an outstanding lien by judgment against the vendor, whereupon the vendee promised the creditor to retain a portion of the purchase-money for his benefit, which the vendee did not do, but under a belief that the vendor was in good circumstances, paid it to him. The creditor suffered the judgment to lie ten years after it was docketed, and then sued out execution, on which the lands so purchased were seized; held, that the vendee's right being clear, he was entitled to summary relief, by an order for a perpetual stay of proceedings; though, it seems, had there been doubt of his good faith, either in respect to the original purchase, or the non-fulfilment of his promise as to retaining the purchase-money, the court would have allowed the creditor to sell. Davis v. Tiffany, 1 Hill, 642. So, also, lands purchased in good faith from the defendant in the judgment, during the running of the ten years, are held free and discharged of the lien, if there be no sale within the ten years, although the purchases be made with the knowledge of the judgment. Tufts v. Tufts, 18 Wend. 621. The ten years commence running at the time of the original docket, and the lien is not saved by subsequent revivals by scire facias. Id. An execution upon a judgment more than ten years old, will not be stayed, unless the application for that purpose be made by purchasers, or incumbrancers. Id. And when made by a purchaser, it seems that a court would require all moneys remaining due to the defendant to be paid to the plaintiff in the judgment. Id. Where a motion was made for a perpetual stay, the notice for which was subscribed by an attorney, as attorney for the purposes of the motion, and no purchaser or incumbrancer was an actor in the proceeding, the motion was denied, &c., and the attorney ordered to pay the costs. Id. A rent charge, that is, a rent reserved upon a lease in fee, containing a clause to enter and distrain for the rent, is an interest in land which is bound by a judgment, and may be sold on execution as real estate, and forms a specific portion of the premises on which it is charged; a rent seck is not such an interest. People v. Haskins, 7 Wend. 463. The interest in lands of a cestui que use may be sold on execution. Jackson v. Walker, 4 Wend. 462. Where the heir, previous to the death of his an-

cestor, conveys by deed all his interest in the estate of his ancestor, and there is a judgment against the heir previous to the conveyance, on which, after the descent of the property, a sale is had, the purchaser at such sale, and not the grantee under the conveyance, takes the land. Jackson v. Bradford, Id. 619. Although a covenant of warranty would bar by way of estoppel the heir and his issue from setting up title to the estate, such estoppel does not affect the purchaser under a judgment entered previous to the conveyance creating the estoppel. Id. The priority to which a judgment in favor of the United States is entitled, does not extend to create a prior lien on real estate; it merely gives a right of prior payment out of the general funds of the debtor in the hands of the assignee. Forsyth v. Clark, on appeal, 3 Wend. 637. A judgment on a warrant of attorney to confess, &c., may be entered after the death of the defendant, provided it be entered as of the term in which he dies, if the death happen during a term; and if it happen during a vacation, that it be entered as of the term immediately preceding the death. Nichols v. Chapman, 9 Wend. 452. Such judgment, however, does not bind the real estate of the deceased; it is merely a debt having a preference, to be paid in the usual course of administration. Id. Nor can execution issue upon such judgment, or upon any other judgment, where the defendant dies after judgment and before execution, until one year after the death of the defendant. Id. To save the lien, not only must the execution issue, but the sale must take place within the ten years, unless the plaintiff has been restrained by injunction or writ of error. Little v. Harvey, Id. 157. The fact of the execution being tested within the ten years, when not delivered to the sheriff until after the ten years, will not help the plaintiff. Id. A judgment against administrators upon a bond and warrant of attorney, executed by them, does not bind the estate of the intestate, so that it can be taken upon an execution issued thereon: nor can such judgment be pleaded by the administrators in support of a plea of plene administravit praeter, &c. Pinney v. Johnson, 8 Wend. 500. A person who obtains a judgment against another, and sells the land of his debtor, becoming himself the purchaser at an amount exceeding the judgment, has no right to redeem the premises purchased by him from the operation of a sale anterior to that under which he purchased; the sale of the land under his execution having extinguished the lien of his judgment, he is no longer a judgment creditor having a lien. People v. Easton, 2 Wend. 297; Wood v. Colvin, 5 Hill, 228. A judgment at law is a lien upon the interest of a cestui que trust, and such interest may be sold by execution where the cestui que use has the whole beneficial interest, and the trustee only a naked and formal title. Jackson v. Bateman, 2 Wend. 570. Where a fi. fa. was levied in the autumn on hides, which were in the vats undergoing the process of tanning, and could not therefore be sold till spring without great sacrifice, and the plaintiffs therefore directed the officer to delay a sale till spring; held, that this did not render the fi. fa. dormant or fraudulent as to subsequent executions. Power v. Van Buren. 7 Cow. 560. One who is in possession of land under a contract of purchase, has a real estate in the land within the statute (1 Rev. Laws, 500) which is bound by a judgment in a court of record; and, therefore, if he assigns his interest and possession after judgment, though before a fi. fa. levied, yet the lien of the judgment continuing, his interest may be sold upon the execution. Id. A levy on a fi. fa. by the deputy of a sheriff, is a constructive levy on the same property of a subsequent fi. fa. delivered to another deputy of the same sheriff. And this, though the property first levied upon be afterward, before the delivery of the second execution, removed into another state and remain there till after the return day of the second execution. Russell v. Gibbs. 5 Cow. 390. See, also, Marsh v. Lawrence, 4 Cow. 461. A fi. fa. does not become dormant or fraudulent as to subsequent executions, by the mere indulgence or negligence of the sheriff to proceed and sell, without any act of the plaintiff. Id. A plaintiff bidding on his own execution, is not bound to pay the money. Id. But if there be a dispute between him and other creditors as to which execution the money is to apply, semble, the sheriff may refuse the plaintiff's bid, or refuse to deliver the property till the money be paid, and proceed to sell again, if it be not paid according to the bid made. Id. But if he sell and deliver the property to the plaintiff, he cannot maintain an action for the price bid. Id. The issuing of an execution before the ten years after docketing a judgment have expired, and a note after it under the ten years, will not extend the lien of the judgment as against subsequent judgment creditors, &c. Roe v. Swart, 5 Cow. 294. A judgment is not a lien upon a mere equity, and such an interest cannot be sold on execution. Jackson v. Chapin, Id. 485. Thus, where R. conveyed lands to B., who held as R.'s trustee, but under an equitable obligation to convey to another; held, that a judgment against B. was not a lien on his interest, and that it could not be sold on execution. Id. To recover in ejectment under a purchase at sheriff's sale, on a judgment against a party not in possession, the plaintiff must prove against the one found in possession, that the party against whom the judgment was rendered had some right, title or interest in the premises sold; and it was held not enough to show that such party held adversely for less than twenty years, but abandoned the premises before judgment, to which she never returned; though a few months after abandoning she conveyed to the defendant in the ejectment, who afterward entered under the conveyance. Jackson v. Town, 4 Cow. 599. An equitable or legal seisin must be shown, on which a judgment can attach, and be a lien, in order to warrant a sale of real estate under it. Id. Where a party against whom the judgment is recovered is the actual possessor, this is sufficient of itself; for actual possession is prima facie evidence of title; and he cannot show title in another. Id. Even if the deed be founded on natural love and affection, it will not be void within the 13 Eliz. as against creditors, if it be not shown that the grantor was indebted to such a degree, that the settlement will deprive the creditors of an ample fund for payment of their demands. Id. And a deed upon such a consideration is good within the 27 Eliz. as against a subsequent purchaser. Id. But not in either case, if a fraudulent use be made of it. Id. Lands are sold on execution for less than the amount of the debt: the creditor cannot afterward sell the same lands for the balance remaining due on the judgment, and thus defeat the title of the purchaser. Wood v. Colvin. 5 Hill. 228; Hewson v. Deygert, 8 Johns. 333. A sale of land upon a judgment and execution, though for only a part of what is due upon the judgment, with the lapse of fifteen months from the time of sale, and a conveyance by the sheriff, destroys the lien of the judgment, even for the balance remaining due; and the judgment creditor for the balance cannot, therefore, redeem the land from a purchaser under a senior judgment, within the statute. Laws 43d Sess. c. 184. § 3: Ex parte Stevens. 4 Cow. 133; Wood v. Colvin, 5 Hill, 228. Such a sale and conveyance also destroys the lien of all junior judgment creditors; so that they cannot redeem from a purchaser under any judgment older than the one upon which the conveyance is made. Id. Thus, where M. had judgment, then C., and then S., all against F., which bound his land; C. sold the land for part of his judgment, then M. sold; C. waited fifteen months from his (C.'s) sale, and took a conveyance, and then, within fifteen months from the time of M.'s sale, paid M. his bid, &c., and claimed to redeem as creditor for his (C.'s) balance: and S. also, in proper time, paid M.'s bid, &c., and claimed to redeem: held that both C.'s lien for his balance and S.'s lien by the

judgment were divested by the sale and conveyance on C.'s judgment, and that neither could redeem. Id. A fi. fa. delivered to the sheriff takes preference of an attachment levied before the fi. fa. but after the delivery of the fi. fa. to the sheriff. Wells v. Marshall, 4 Cow. 411. A judgment created upon full consideration, though for the express purpose of enabling the creditor to redeem, is valid. Snyder v. Warren, 2 Cow. 518. A judgment is not a lien on a term for years. Merry v. Hallet, Id. 497; Vredenbergh v. Morris, 1 Johns. Cas. 223. The lien is now extended to terms for years. 2 Rev. St. 282, § 3, note e. A judgment for costs in partition is within the first proviso of the first section of the act concerning judgments and executions, and is a lien on the land for ten years only. Lansing v. Vischer, 1 Cow. 431. Where a defendant in partition made a written agreement to sell his share to R., who had notice of the lien, and agreed to pay the costs; and R. afterward assigned the contract to another for a valuable consideration without notice of the lien, no execution having issued within ten years after the judgment: it was held, that the assignee was a bona fide purchaser, and protected against the judgment, although he did not actually receive a deed from the defendant until after the execution issued. Id. Where an execution has lain dormant in the hands of a sheriff for a year, without any actual levy, a sale of a specific chattel for a fair price, and without any fraudulent intent on the part of the purchaser, is not void. Bliss v. Ball, 9 Johns. 132. A judgment does not, of itself, transfer the title of the lands bound by it, or destroy the seisin of the defendant. Sedgwick v. Hollenback, 7 Johns. 376. A judgment, by agreement of the parties, may be entered up for a debt due, and also as security for future advances to the defendant: and the plaintiff may collect, by execution, not only the sum actually due at the time the judgment was entered, but the amount subsequently advanced to the defendant, provided the whole does not exceed the amount in the condition of the bond, on which the judgment is given. Livingston v. McInlay, 16 Johns. 165. Where the body of a defendant is taken in execution, the lien of the judgment upon his land is suspended: and if, during his imprisonment, a fi. fa. is issued on a junior judgment under which the land is sold, and he is then discharged from imprisonment under the act for the relief of debtors with respect to the imprisonment of their persons, and then the plaintiff in the prior judgment issues a fi. fa., this does not give that judgment a priority of lien, or defeat the title acquired under the later judgment. Jackson v. Benedict, 13 Johns. 533. The act concerning judgments (Laws 36th Sess. c. 50; 1 Rev. Laws N. Y. 500) was intended to protect purchasers, and does not alter the law between the parties; and, as between them, the goods of the defendant are bound from the teste of the fi. fa. Hotchkiss v. McVickar, 12 Johns. 403. And if a third person takes away goods of the defendant after the teste of the fi. fa., they may still be levied upon. Id. A stipulation not to take out execution against the body or personal property of the defendant, in consideration of his confessing a judgment, does not prevent the judgment operating as a lien upon his real estate. Van Rensselaer v. Sheriff of Albany, 1 Cow. 501. It was decided that a person in possession of land under a contract of purchase, has an interest in the land, which may be sold on execution. Jackson v. Scott, 18 Johns. 94. The facts were the following: In the spring of 1817, the title was in the people of the state. The premises were sold by the surveyor-general to Elijah Scott, and a certificate was given him by which he would be entitled to a patent on complying with the conditions of sale. A judgment had been docketed against Scott before this purchase from the state. In August, 1817, Scott assigned the certificate to the defendant, who was his son-in-law, who went into possession of the premises. In May, 1818, an execution was issued on the judgment against E.

Scott, and the premises sold, and the purchaser at sheriff's sale brought ejectment. Spencer, Ch. Justice, says the only question is, whether, as E. Scott had only the possession of the premises, with a contract from the surveyor-general entitling him to a conveyance on the payment of certain sums of money which yet remain due, he had such an interest as might be levied on and sold on execution. He adds, that whether E. Scott was seized or not, was not subject of inquiry: for if not seized, he had a chattel interest liable to be sold. Jackson v. Pike, 9 Cow. 81. By the second section of the "Act concerning judgments and executions," passed the 31st of March, 1801, a judgment lien attaches upon land from the time of filing the record of judgment. Waterman v. Haskin, 11 Johns. 228. By the third section of that act the clerk is directed to docket all judgments during the term, or within six days after the term of which such judgments are rendered: and no judgment, not docketed "as aforesaid," shall affect any lands or tenements as to purchasers, etc. Id. In this case, both judgments were filed on the same day and were docketed on the same day that they were filed. Id. The priority of docketing, therefore, seems to be immaterial, as between these judgments; and the case admits it to be altogether uncertain which judgment roll was first filed. Id. We must consider the judgments equal as to the date of the lien; and as Halstead first sued out his execution, and the sheriff began to execute it before the fi. fa. issued on the judgment of Waterman, Halstead thereby turned the scale of equal right, and gained a priority by his vigilance. Id. One who is in possession of land under a contract of purchase, has a real estate in the land, within the statute (1 Rev. Laws, 500), which is bound by a judgment in a court of record; and therefore, if he assign his interest and possession after judgment, though before a fi. fa. levied, yet the lien of the judgment continuing, his interest may be sold upon the execution. The docketing of the judgment is notice to the purchaser as in other cases. Jackson v. Parker, 9 Cow. 73. Lands in a defendant's possession when judgment is obtained against him, may be sold by execution, though at the time of the sale they are holden adversely to him. Jackson v. Tuttle, Id. 233. One in possession of land has an interest in it which is bound by a judgment, though the title be in another. Id. Where one, after a judgment is obtained against him, aliens a part of his real estate on which the judgment is a lien, on motion to the court in which judgment was obtained, or on filing a bill in chancery, the judgment creditor will be compelled, by order or decree, to exhaust the estate remaining in the debtor's hands before selling the part so aliened. Clowes v. Dickinson, Id. 403. And if the creditor, or any other having the control of his judgment, cause a sale of the aliened estate before resorting to the other, the latter being sufficient to pay his debt, though no order or decree be obtained, he shall restore the real estate to the alienee, or if sold by the sheriff to a bona fide purchaser, shall account to the alienee for the value of the real estate aliened, if the other would have satisfied the judgment, or, if not, restore or account for the value beyond what would, with the other, have satisfied the judgment. Id. And the alienee having stood by, and seen the legal estate pass from him, shall not be allowed the land itself, with improvements made subsequent to the sheriff's sale, and before the alienee of the judgment debtor asserts his claim. Id. The better opinion is, that judgments bind after purchased lands, even in the hands of a purchaser. Stow v. Tifft, 15 Johns. 464. But not in a case where seisin was but instantaneous: and the title passed out of the grantee at the same instant. Id. The modern doctrine is not merely that the purchaser must know of the judgment. The fact will not, of itself, defeat a bona fide sale, or make it, in judgment of law, fraudulent. If that was the rule of law, it would put a most inconvenient check

to the circulation of personal property. The rule is, that the purchaser. knowing of the judgment, must purchase, with the view and purpose to defeat the creditor's execution; and if he does it with that purpose, it is iniquitous and fraudulent, notwithstanding he may give a full price. Beals v. Guernsey, 8 Johns. 348. A judgment of more than ten years' standing, its lien as to bona fide purchasers and junior judgments, having expired within the act of 1813, concerning judgments and executions (1 Rev. Laws. 500, § 1), ranks, in effect, as a judgment junior to later judgments; and may redeem from a sale under them, according to the statute (Laws 43d Sess. c. 184). Ex parte Peru Iron Co., 7 Cow. 540. It continues a lien as to the judgment debtor and his heirs. Id. Under the act (Laws 43d Sess. c. 184, § 3), a senior judgment creditor may redeem from a sale upon a junior judgment. Id. A purchaser of land, or one who redeems from a sheriff's sale upon a junior judgment or upon a judgment whose lien has expired by the lapse of ten years, acquires all the interest of the judgment debtor; becomes, in effect, his grantee; and may redeem as such, within twelve months after a sheriff's sale upon a senior judgment. Id. A sale of land upon execution does not carry a title, but a lien, till after fifteen months. Id. One who acquires title to the land of a judgment debtor by purchase, at a sheriff's sale, being considered a grantee; on his redeeming within twelve months from a sale upon a senior judgment, the latter sale becomes void. Id. Semble, that one having purchased land at a sheriff's sale, acquires, at first, a mere lien, which he may release or discharge. without the consent of the junior judgment creditors. Id. A junior judgment creditor pays a purchaser under a senior judgment which he owns, his purchase-money, with ten per cent.; and takes an acknowledgment of the payment, an assignment of the judgment, and all the purchaser's interest in the land, with an order on the sheriff to convey to the person paying. Held, that the person paying is to be considered a redeeming creditor; not a mere assignee. Id. Where one comes to redeem land sold on execution, from one who has before redeemed; and the latter claims to have an increased payment to him as assignee of a judgment in virtue of which he redeemed, he must furnish proof of his right to such judgment; and it is not enough to furnish a mere memorandum, and give notice of the assignment. Id. Though a judgment creditor has once redeemed upon his judgment, and takes a title, it is not a satisfaction; and he may redeem again in virtue of the same judgment; especially from a sale on a judgment senior to his own and the one from which he first redeemed. Id. A tender by one judgment creditor to another, does not discharge the lien of the latter. Id. Where several judgments are of more than ten years' standing, they rank in relation to one another according to their actual priority of date, the same as if the act (1 Rev. Laws, 500, § 1) had never been passed. Id. H. obtained judgment. then K. and then P., against the same defendant. on whose land the judgments were liens. This land was sold on H.'s fi. fa. to K. for $20. P. redeemed from K., by paying the $20 and ten per cent.: and after fifteen months took a deed from the sheriff. K. insisting that P.'s redemption was not good, his (K.'s) intermediate judgment not being paid, the sheriff afterward gave him a deed, and he brought ejectment against P.'s tenant. Held. that the second deed was void: P.'s right having become perfect by lapse of time. Jackson v. Budd, 7 Cow. 658. Held, that K. should have redeemed of P., which he might have done, on simply paying the redemption money paid by P.; and was not bound to pay P.'s judgment.

[See Cases Nos. 8,052 and 8,927.]