LAMBERT and others *against* J. PAULDING

W. PAULDING *against* THE SAME.

*CAINES*, for the plaintiffs in the first cause, moved that the sheriff of the county of *Westchester* do pay to the plaintiffs in the first suit above mentioned, or to their attorney, out of the monies in his hands, arising from the sale of the sloop *Euphemia*, on the executions in the above causes, the amount of the execution in the first cause. From the affidavits which were read, it appeared, that on the 11th of *August* last, a judgment was entered up against the defendant, at the suit of the plaintiffs in the first cause, and on the 12th of *August*, a *fieri facias* was issued thereon, directed to the sheriff of the city and county of *New-York*, with directions to levy on the sloop *Euphemia*, belonging to the defendant, then lying in the city, but no actual levy was made. On *Monday*, the 14th of *August*, the defendant being told by his attorney that there would probably be a judgment entered up against him, at the suit of *Lambert* and others, on the 15th of *August*, confessed a judgment in favour of the plaintiff,

The goods of the debtor are bound by the delivery of the execution to the sheriff, and the creditor in the execution, acquires a *lien* of which he cannot be deprived by the act of the debtor; and if the goods, before an actual levy and sale, are removed by the debtor out of the bailiwick of the sheriff, into another county, and are there taken and sold under an execution subsequently issued, though the *bona fide* purchaser, at such sale, acquires a valid title to the goods, yet the *proceeds* of such sale in the hands of the sheriff will be ordered to be paid to the plaintiff in the first execution, to the amount of his debt, leaving the residue, if any, for the plaintiff in the second execution.

(*W. P.*) in the second cause, on a bond dated the 1st of *July*, 1814, conditioned for the payment of 7,370 dollars. The judgment roll was filed in the clerk's office, at 2 o'clock, P. M., and an execution issued thereon to the sheriff of *New-York ;* but the plaintiff's attorney then learning, for the first time, that a judgment had been actually entered up in the first cause, and an execution issued thereon to the sheriff of *New-York,* countermanded his execution, on the same day, and issued a *test. fi. fa.* to the sheriff of *Westchester,* which was delivered to his deputy, on the morning of the 15th of *August.* It appeared that the defendant, on the morning of the 14th of *August,* removed the sloop from *New-York* to *Tarrytown,* in the county of *Westchester ;* and the sheriff of that county there seized and sold the vessel, under the *test. fi. fa.* so delivered to him in the second suit ; but the money arising from the sale, being 1,800 dollars, was retained in his hands, by an order of the recorder of the city of *New-York,* until an application should be made to this Court. On the 19th of *August,* a *test. fi. fa.* in the first suit, was delivered to the sheriff of *Westchester.*

*Caines,* in support of the motion, said, that he did not intend to deny the common law right of a debtor, to prefer one creditor to another, nor that a judgment confessed for a *bona fide* debt, in favour of one creditor, during the pendency of a suit by another, might gain a legal priority over the judgment subsequently recovered, though confessed with a view to such priority ; but, he said, to warrant that priority, the execution on the judgment confessed, must be delivered to the sheriff before the execution sued out on the judgment recovered. Such was the case of *Holbird* v. *Anderson,* (5 *Term Rep.* 235.) inaccurately stated by Mr. *Tidd,* in which the execution on the judgment confessed, was in the sheriff's hands two hours before the execution on the judgment recovered. The reverse was the fact in the case now before the Court. The rule, therefore, *qui prior in tempore, potior in jure,* would govern the rights of the plaintiffs in the respective suits.

*Talcot*, contra, for the plaintiff, *Paulding*. By the sta-
tute (sess. 36. ch. 5. s. 6. 1 *N. R. L.* 501. 502.) no ex-
ecution binds the goods of the defendant, until such ex-
ecution is delivered to the sheriff, or other officer, to be
executed. The provision of the statute prevents the debt-
or from making any sale of the property ; but if the goods
remain in the possession of the debtor, without having been
levied on by the sheriff, on the execution in his hands, they
may be levied on and disposed of, by virtue of any other exe-
cution, for a *bona fide* debt, though subsequently issued ; and
the purchaser under such subsequent execution, will hold
the property. Under this statute, it has been held, " that
neither before nor since the statute of frauds, is the proper-
ty of the goods altered, but remains in the defendant until
*execution executed :*" (2 *Equ. Cas. Abr.* 381. per Lord *Hard-
wicke. Hotchkiss* v. *M'Vickar*, per *Spencer*, J 12 *Johns. Rep.*
403. 407.) and the meaning of the words, " that the goods
shall be bound from the delivery of the writ to the sheriff," is,
that after the writ is so delivered, if the defendant makes any
assignment of his goods, *except in market overt*, or by be-
coming a bankrupt, which is an assignment in law, the she-
riff may take them in execution. If two writs of execution
be delivered to the sheriff on different days, and the sheriff
executes the last writ first, by making sale of the goods, the
sale will stand good, and the plaintiff who delivered the ex-
ecution first to the sheriff, may have his remedy against him.
(*Carthew*, 420. *Sanford* v. *Roosa*, 12 *Johns. Rep.* 162. 2 *Salk.*
320. 1 *Term Rep.* 729. 1 *Lord Raym.* 252. 2 *Ventris*, 218. 3
*Lev.* 69. 191. *Lord Raym.* 724.) Though a *fi. fa.* binds the
goods, as against the defendant, yet the property remains in
him, until execution executed ; and, therefore, a sale under a
subsequent execution vests a title in the purchaser ; and
the plaintiff in the first execution is left to his remedy against
the sheriff, unless there has been some fault or *laches* on his
part. (*Payne* v. *Drew*, 4 *East*, 523.) The cases referred
to, show, that the property of a defendant is not so com-
pletely bound, by the delivery of an execution to the sheriff,
but that the former has some control over it, until *execution
executed*, or until it is levied upon and sold under an execution
subsequently issued, or is transferred by the operation of a

UTICA,
October, 1820.

LAMBERT
v.
PAULDING.

UTICA,
October, 1820.

LAMBERT
v.
PAULDING.

bankrupt law. The defendant, then, in this case, had a right to remove his property before execution executed. It does not appear that when he removed his vessel to *T.* that he knew that an execution had been issued against him ; though he expected that there would be such an execution the next day. Even if he had known of the execution being in the hands of the sheriff, he had a right to remove his property beyond its reach, before any levy was actually made.

Again ; a debtor has a right to prefer one creditor to another, and confess a judgment for a *bona fide* debt due, without its being deemed fraudulent, there being no bankrupt law to prevent it. (*5 Term Rep.* 235. 420. 425. *Rob. on Fraud. Conv.* 491.) (*a*) Indeed, it is not pretended that *W. Paulding's* judgment was not for a just *debt* then due.

Again ; the judgment of *Lambert and others,* was entered up on the 11th of *August,* being the *quarto die post* of the *August* term, as a final judgment ; but if, as is the opinion of many of the bar, the rule for judgment should have been *nisi,* final judgment could not have been entered regularly, until the 15th of *August.*

*Caines,* in reply, said, that he did not deny the law of the cases which had been cited ; but the present case was easily to be distinguished from them, by considering the parties against whom the applications were made in the cases relied on. They were either *bona fide* purchasers, and the attempt was to take from them what they had honestly purchased and paid for, or sheriffs who were to be made to pay another's debt. The contest here is between two incumbrancers on the same subject matter. The *lien* acquired by the first, could not be impaired by any act of the second, either by himself, or jointly with the owner of the chattel. When the *Lamberts* lodged their writ with the sheriff, they acquired a *lien* on the vessel ; and when the writ of *W. P.* was delivered to the sheriff, he, or his attorney, knew of the previous *lien* of the *Lamberts.* The subsequent sale of the

(*a*) Vide *Pickstock* v. *Lyster,* 3 *Maule & Selwyn,* 371. 4 *East Rep.* 1. *Jackson* v. *Brownell,* 3 *Caines,* 222. 5 *Johns. Rep.* 335, 412. 3 *Johns. Rep.* 71.

sheriff of *West-Chester*, on the *test. fi. fa.* of *W. P.* was subject to the *lien* of the execution of the *Lamberts*. By granting this motion, the property in the vessel acquired by the purchaser, under the sheriff's sale, will remain undisturbed. The purchaser keeps what he has bought; but the proceeds in the hands of the sheriff are subject to the *lien* of the first execution of the *Lamberts*. *W. P.* in selling, acted for the *Lamberts*, to the amount of their prior *lien*, and for himself as to the residue. The property passed and continued in the vendee. From these facts, and the consequences to be deduced from them, it is evident, that the granting of this motion will leave the principles of the cases cited untouched, and be perfectly consistent with them.

*Per Curiam.* The delivery of the *fi. fa.* in the suit of *Lambert* and others, against the defendant, to the sheriff of the City and County of *New-York*, bound the goods of the defendant, then in his bailiwick; and the plaintiffs, in that execution, cannot be deprived of the *lien* on the sloop, which was then lying in *New York*, by the act of the defendant, in removing the vessel into another county. He would be liable to an action, at the suit of the sheriff, for so removing the property. We therefore grant a rule that the sheriff of *West Chester* pay over to the plaintiff in the first suit, the 1,800 dollars, the proceeds of the sale of the sloop *Euphemia*, remaining in his hands.

Motion granted.