MARSH *against* LAWRENCE.

ERROR from the C. P. of Onondaga, where the cause came by appeal from a Justice's Court, by which judgment was rendered against Marsh for $30.

The action below was trover by Edmund Lawrence against Marsh for a horse. The cause was tried in the C. P. in August, 1822, when the jury found a special verdict, that in the term of November, 1818, in the C. P. of Onondaga, one Hutchinson recovered a judgment of $1010, the penalty of a judgment bond, and costs, against M. Curtis and Joab Lawrence, which was docketed December 11th, 1818 ; that a *fi. fa.* issued thereon, and was delivered to Bronson, a deputy sheriff, the 28th September, 1819, at 8 A. M. who levied upon the personal property of Curtis and Lawrence, and sold Lawrence's property on the 15th September, 1821, to $450 30, which was paid to Hutchinson ; and on the 15th of January, 1822, Hutchinson received $240 90, in full of his judgment. That the judgment was given for a debt of Curtis, Lawrence being the surety ; that under date of the 10th May, 1820, Curtis executed a bill of sale of the horse in question, with divers other personal property particularly mentioned in it, reciting that Lawrence had thus become security, and providing that the

*Margin notes:*
What shall be deemed a valid confession of judgment before a justice under the statute (sess. 41, ch. 94, s. 7.)

Form of a confession, specification and affidavit under that statute recognized as valid.

A specification, stating generally, that the debt is due from the defendant to the plaintiff, for money paid by the latter, as security for the former, is sufficient.

A bill of sale, or assignment of goods, declaring that the object is to secure the vendee as surety for the vendor, and that in case the vendee shall become liable, that he may turn the goods out on execution, or that they should be at his disposal at private sale, accounting to the vendor for the proceeds, is in nature of a mortgage, the possession of the vendor consistent with the face of the deed, and therefore not evidence of fraud as to creditors.

An equity of redemption in goods cannot be taken and sold on execution.

A justice's execution was levied on goods, which were sold ; but previous to the levy, a *fi. fa.* against the same goods had been delivered to the sheriff; *held,* that the levy and sale upon the justice's execution changed the property of the goods, and the sheriff could not afterwards take them.

If a sheriff, having two executions, sell on a junior one, the sale is valid.

The supreme court will not interfere summarily, and direct how money levied on execution by a constable, or other person not their own officer, shall be applied.

Otherwise as to their own officers.

Whether a levy will ever be presumed, as between conflicting executions, (doubted by SUTHERLAND, J. interrupting Noxon, *arguendo*.)

It seems, that a levy will be presumed in no case, unless where a want of it would be gross negligence in the officer. (Per SUTHERLAND, J. interrupting Noxon, *arguendo*.)

articles should be at the disposal of Lawrence, in case he should be made liable on the judgment; that he might turn them out to be sold on the execution, or take them into his own possession, and dispose of them at private sale, accounting to the vendor for the proceeds. That this instrument was made out in 1821; and was sent by Curtis to Lawrence on the 15th September, 1821, without any request of Lawrence for that purpose, at that time; though Lawrence had frequently requested Curtis to secure him; that the bill of sale was intended to include all the personal property of Lawrence holden by the execution; and was ante-dated by mistake; that Lawrence never took possession of the property, or any part of it. That on the 30th November, 1821, a judgment was rendered before N. H. Earll, Esq. a justice of Onondaga, in favor of Lawrence, against Curtis, for $100 32, on a written confession, in these words: "*Joab Lawrence* v. *Medad Curtis.* Medad Curtis, the defendant in this cause, hereby certifies, that he is indebted to the plaintiff in this cause, in the sum of $100 over and above all demands in favor of the defendant against the plaintiff; and that the same is due for money paid by him to James Hutchinson, as security for him, the defendant. Witness, &c. November 20th, 1821." (Signed) Medad Curtis. That the judgment confessed was for part of the money raised by a sale of Lawrence's property; and Curtis made affidavit before the justice thus: "Onondaga county, ss. Medad Curtis the above named defendant, being duly sworn, saith, that the above statement is true, and that the judgment confessed in the above cause is not for the purpose of defrauding creditors, and that he honestly and truly owes that sum to Medad Curtis." That on the 1st December, 1821, execution was issued on the judgment by consent of Curtis, and delivered to J. Bronson, a constable, who, on the 3d December, 1821, levied on Curtis' property, including the horse, having then the bill of sale, which was delivered by Joab Lawrence to his son Edmund Lawrence, (the defendant in error,) the appellee in the Court below, and by him delivered to Bronson, to have the property specified in it levied upon by him, on the justice's execution. That on the 15th December, 1821, Bronson sold the horse

on this execution to Edmund Lawrence, (the defendant in error,) who took him into his possession. That other articles beside those mentioned in the bill of sale were also levied on and sold. That when the horse was sold, he was in Curtis' barn, but had been taken out and shown, and several bids made on him, &c. That in August term, 1820, of the Onondaga C. P., Jonas Earll, Jun. recovered judgment against Curtis, for $102 47, docketed 29th August, 1820 ; upon which a writ of *fi. fa.* was issued and returned *nulla bona ;* and on the 30th November, 1821, an *alias fi. fa.* tested the 29th November, 1821, and returnable the 4th Monday of February thereafter, was delivered to Elisha Marsh, (the plaintiff in error,) the appellant below, a deputy sheriff of Onondaga ; that on the 18th December, 1821, Marsh took the horse in question from Edmund Lawrence, and advertised and sold him previous to this suit being commenced before the justice. That Curtis had possession of, and used the horse from the 30th November, to the 15th December, 1821, Marsh & Curtis residing within 100 rods of each other in the same village. That Marsh knew nothing of the constable's sale, till the day he took the horse. That the execution in favor of Earll was returned satisfied by Marsh ; but whether, &c.

The Court of Common Pleas gave judgment for the plaintiff (the appellee) below.

*B. F. Butler*, for the plaintiff in error.

1. The property of Curtis was bound from the time when the *alias fi. fa.* was delivered to Marsh, the deputy. The defendant in error relies on the general principle advanced in *Payne* v. *Drew*, (4 East, 523,) that till actual levy, the property, notwithstanding the delivery of the execution to the sheriff, remains in the defendant, subject to be levied upon by any other process. We understand this Court have followed *Payne* v. *Drew*, in *Hotchkiss* v. *M'Vicker*, (12 John. 403.) There is a distinction, however, between the sheriff's right to maintain trover, and his right to seize the property. But admitting the constable's lien could not be divested by any act of the sheriff, while that lien existed ; that the sheriff could not take the property out of the con-

stable's hands, because it was in custody of the law, the reason had ceased in this instance ; for it was sold and had passed into the hands of the defendant in error. The lien had therefore ceased. It is extremely well settled, that the defendant in the execution cannot, by any voluntary sale or assignment of his own, defeat the lien which is created by the mere delivery of the execution ; but the sheriff may take the property wherever he can find it in his county, before the return day of the execution. (*Haggerty* v. *Wilber*, 16 John. 287. *Lambert* v. *Paulding*, 18 id. 311. *Beals* v. *Allen*, id. 363.) Now, if the defendant, Curtis, could not prevent the sheriff's following the property by a direct sale, shall he be permitted to work that consequence indirectly by voluntarily creating a judgment, and procuring a judicial sale. In a word, shall he be permitted to do that indirectly, which the law will not allow him to do directly ? to do that by operation of law, which he cannot do by his own act ? There is no more reason for protecting the purchaser in one case than in the other. The goods are subject to the previous lien, like lands to the judgment first docketed. The delivery of a *fi. fa.* to the sheriff has the same effect upon the defendant's goods, as the docket of a judgment upon his lands. Unless this be so the plaintiff in the execution is without remedy. The purchaser of the goods is not a sufferer. He is bound to inquire, and know of all executions in the sheriff's hands ; and the omission to do so is his own fault. There is the more reason that he should be holden to this in the case before the Court ; for you have no control over the money in the hands of the constable, he not being your officer, but an officer of the inferior Court. Beside, a previous levy by the sheriff should be presumed.

2. The defendant in error can claim no rights under the bill of sale, for several reasons. One is, because it was never executed. Joab Lawrence did not know of it, nor assent to it ; another, he waived it by selling under the execution ; another, it was fraudulent and void as being a general sale, and the possession never changed ; (*Sturtevant* v. *Ballard*, 9 John. Rep. 337, and the cases there cited ;) another, that the sale was to Joab Lawrence. How can it be made to

enure to the benefit of Edmund Lawrence, the defendant in error, who was a stranger to the transaction, so· as to enable him to maintain trover ?

2. The judgment·in favor of Joab Lawrence·was void.· The confession was defective within the statute, (sess. 41,· ch. 94, s. 6, 7.) The written confession and specification are not sufficiently definite to satisfy the 7th section of the act. The oath was not in due form. The specification should, at least, be as·particular·as was required by·the act· passed at the same session, in relation to confessions·in courts of record.· (Ch. 259, s. 8.· ·Lawless v. Hacket, 16· John. 149.) · By the act now in question, the defendant is required to *set forth the particular items of the demand.* The specification is too general. It·is no· guide to·credi tors, who were actually concerned in this case ; and there· fore the doctrine in *Griffin* v. *Mitchell,* (2 Cowen, 548, 550,)· cannot be replied to us. The statute (7th sect.) declares· the judgment void if it want·the proper specification ; and *Woodcock* v. *Bennet,* (1 Cowen's Rep. 711,) reviewed all the cases, and declared that where the judgment·is void,· even purchasers *bona· fide,* will·not be protected.

*B. D. Noxon,* contra.· The assignment of the property was· by way of mortgage, and it has been often decided that a continuing possession of the vendor being consistent with the contract, is, in such case, no evidence of· fraud. · That the transaction was morally right, appears by the · special verdict. Edmund Lawrence, though not·nominally· a party, was really·so. · The bill of sale was delivered to him. At any rate he was the·agent; as such, had posses- sion of· the property, and might maintain trover. He was a bailee. It appears from the· verdict, that the claim upon· the mortgage was· never abandoned·; at least, the verdict· does· not·find·that it was ; and, therefore, the equity of·re- demption was sold.

The· confession, specification and·oath, though·not for- mal, are a substantial· compliance·with· the statute. The cause and·item·of·indebtedness are given.· It is for·money· paid as security ;· and· could not·be·more·specific.·

Here is no room to presume a previous levy by the sheriff. The doctrine of presumption comes in only where the execution has been a long time in the sheriff's hands. The verdict finds there was no levy, and none was endorsed on the execution.

[SUTHERLAND, J. It is, at least, questionable whether a levy should ever be presumed as between conflicting executions; and I do not think it could be presumed here, upon any ground. It is done, I believe, only in cases where a want of it would be gross negligence in the officer.]

If there be any presumption here, it is against the levy.

I had almost supposed the gentleman had given up his claim upon the point of the previous delivery of the execution; as he put himself on *Payne* v. *Drew*, (4 East, 523,) which, if law, is certainly against him. But he seemed to suppose that case merely went against trover by the sheriff. Our statute is the same as the English; and our common law is the same, touching the effect of the delivery of an execution. *Payne* v. *Drew* decides, that where there are two equal authorities, the one first actually levied or executed takes preference. It is agreed that the sheriff had not such a lien as would sustain trover. This is the settled law. (*Hotchkiss* v. *M'Vickar*, 12 John. Rep. 403.) The cases cited from the 18 Johnson, are, that the defendant cannot defeat the execution by voluntary assignment; and where he removes the property, and it is sold on an execution subsequently delivered, *not that the sale shall be defeated*, but merely that the money, the avails of the sale, shall be applied under the direction of the Court, according to the date of the delivery of the executions. This leaves the sale to stand good. Such was the case of *Lambert* v. *Paulding*, (12 John. 311.) That case is stronger for us than *Payne* v. *Drew*. The objection that the defendant was doing indirectly, through a judgment confessed, what he could not do directly, will not avail. It cannot be pretended that there was any fraud in the proceeding. Where two executions are in the same sheriff's hands, and he sells on the younger, even there the sale would be valid. (*Smallcomb* v.

*Cross & Buckingham,* Carth. 419, 20. 1 Salk. 320, and 1 Ld. Raym. 251. *Sanford* v. *Roosa,* 12 John. Rep. 162, 3, 4.)

*Curia,* per WOODWORTH, J. (After stating the case.) The specification filed with the justice was substantially a compliance with the statute, (sess. 41, ch. 94, s. 7.)

The bill of sale must be considered in the nature of a mortgage, and the possession of Curtis consistent with it. It provides that the articles conveyed should be at the disposal of Joab Lawrence, that he should have the right to turn them out to be sold on the execution of Hutchinson, or dispose of them at private sale. Lawrence, then, had the right of taking possession at any time when he should think proper. Curtis had no right to detain them for any definite period. He was subject to the pleasure of Lawrence. He had, indeed, an equitable interest, in the nature of an equity of redemption, in the goods, and a right to any surplus, if they were sold. If this be so, I do not perceive that they could be considered, in judgment of law, the goods and chattels of Curtis, so as to be subject to the execution of Earll. That could not attach on an equity, which was all that remained in Curtis. If, therefore, it be conceded that the defendant in error acquired no title under his purchase, still he had the lawful possession of the horse, and might well maintain an action against the plaintiff in error, who derived no authority from the execution to make the levy and sale. I incline to think that the decision of this cause might be placed on that ground.

If, however, I am mistaken on this point, then the question arises, whether the Common Pleas execution of Earll, having been *delivered* to the sheriff before the Justice's execution was *levied,* is entitled to a preference. If the property was bound from the time of the delivery, and the defendant in the execution could not make a valid sale of it afterwards, the law will not permit him to do the same thing indirectly, by confessing a judgment and authorizing a judicial sale.

But a more difficult question is presented here, and that is, whether the purchaser under the justice's execution is

Marsh
v.
Lawrence.

not protected? I am not aware that this point has been decided by our Courts.

The statute declares that no writ of execution shall bind the property of the goods, but from the time the writ shall be delivered to the sheriff. (1 R. L. 502.) The meaning of these words is, that after the writ is so delivered, the defendant cannot make an assignment, or do any act to divest the right of the sheriff to take the goods. The delivery does not alter the property; but both before and since the statute of frauds, it continues in the defendant until execution executed. (12 John. Rep. 403.) The delivery of the execution does not, however, in every case, authorize the sheriff subsequently to take the goods and sell them. In *Payne* v. *Drew*, (4 East, 538,) Ld. Ellenborough very fully and accurately examined the cases on this subject and observed, that "the sense in which, and the extent to which goods are said to be bound, is, that it (the *fi. fa.*) binds the property as against the party himself, and all claiming by assignment from, through, or under him; but it does not so vest the property in the goods, absolutely, as to defeat the effect of a sale thereof, made by the sheriff under an execution." A sheriff cannot maintain trover for goods taken out of the possession of the party, against whom the execution issued, until he has made a levy. He has only a right to seize the goods if he can find them. (12 John. 403.)

It is well settled, that if two writs of *fieri facias* are delivered to the sheriff, and he sells under the junior execution, such sale cannot be avoided, and the party has no remedy but against the sheriff. The property of the goods is bound by the sale; and cannot be taken by the execution first delivered. The reason given is, "that sales made by the sheriff ought not to be defeated; for if they were, no man would buy goods levied upon by a writ of execution." (1 Ld. Raym. 252. 4 East, 523. 12 John. 163, 403.)

The present case is distinguished by this: that here are different officers. But, if the principle be sound, it follows, that any junior execution, first levied, and a sale under it, confers a good title on the purchaser. If the executions are in the hands of the same officer, the plaintiff in the first ex-

ecution has a perfect remedy against him; for it is his duty to sell on the first; and if he does not, he is answerable. If the executions are in the hands of different officers, then the liability of the sheriff to whom the first execution was delivered, would depend on the question, whether he had been guilty of negligence in not having made a levy before the sale under the second execution. If there be no negligence, I apprehend the party would be without redress, unless the money produced by the sale under the second execution happened to remain in the hands of the sheriff, when an application was made to the Court for a rule directing to whom it should be paid over. This was done in *Lambert* v. *Paulding*, (18 John. 311.) If, however, it should appear that the money actually raised on the second execution had been paid over to the plaintiff in that execution, this remedy would fail; and consequently, the lien arising by the first delivery would become ineffectual. Whatever might be the result of an application against an officer of the Court, directing him to pay over money, the execution of this summary jurisdiction would not be used to enforce such an application against an officer of another Court, over whom this Court has no control. But if otherwise, it does not affect the present question, which is between the sheriff and the purchaser under the second execution. The general principle, it appears to me, goes the whole length of upholding the title of the purchaser under the second execution, provided the levy and sale were perfected, before a levy on the first. The fact that one execution issued from this Court, or the Common Pleas, and the other from a Justice's Court, cannot change the principle which governs.

In the case of *Lambert* v. *Paulding*, it appeared that the vessel was bound by an execution delivered to the sheriff of New York. It was removed to Westchester; and there levied on and sold. The title of the purchaser was not even questioned. It was conceded on the argument, that the property in the vessel acquired by the purchaser remained undisturbed. The claim was, that the proceeds in the hands of the sheriff were subject to the lien, and the Court directed the sheriff to pay them over. This case is

very much in point. The only difference is, that the pui·chaser derived his title from a constable's sale, and not from a sheriff's. But the constable, in this case, had the same right to levy and sell the horse, that the sheriff of Westchester had to sell the vessel. If so, the purchaser's title is valid. It was not, then, competent for the sheriff to take the horse, by virtue of his execution, from the premises of the defendant in error; and the judgment must be affirmed.

Judgment affirmed.