# SUPREME COURT.

Ezra R. Hall, respondent, agt. John S. Samson, appellant.

It is well settled that under our statutes, a *mortgagor of goods* has no property in them subject to levy and sale on execution, *unless* he has a *right to the possession* of them for a *definite time;* and that a mortgagor in possession of a chattel *after forfeiture*, or when the mortgagee may take *possession at his pleasure*, has no interest which is the subject of sale on execution.

It is equally well settled that a mortgagor of a chattel in possession, with the *right of possession for a time certain*, has an interest which may be sold on execution.

This *right of possession* incident to the ownership, is the proper subject of an *agreement between the parties*, and the legal effect of the mortgage may be restrained or modified by such agreement. The mortgage must be interpreted by the same rules which govern the construction of other contracts, and the intent of the parties, as declared in the mortgage, must be carried into effect; and in this, as in other cases, an agreement may be *implied*, as well as expressed in terms.

Where a chattel mortgage contains a provision to the effect that in case of non-payment of the amount secured at the time limited for the payment thereof, then the mortgagee shall have full power to enter upon the premises of the mortgagor, or any other place or places where the goods and chattels may be, to take possession of and sell the same, &c.; *and in case the mortgagee shall at any time deem himself unsafe, it shall be lawful for him to take possession of such property and to sell the same, &c.*

*Held*, that the very terms of the mortgage and the authority given to enter, upon breach of the conditions, on the premises of the mortgagor, and take possession of the property, clearly imply that until that time the goods are to remain *in the possession of the mortgagor*. Therefore, until a *default* in the payment of the mortgage debt, or until a *demand* of the goods by the mortgagee, under the clause of insecurity, the property is liable, and the interest of the mortgagor therein may be sold on execution.

*Fifth District, Syracuse General Term, October*, 1859.

This action was commenced December 25, 1858. The plaintiff claimed to recover the value of a piano, taken by the defendant as sheriff of the county of Cortland. The mortgage was given by Matthew F. Walpole to the plaintiff on the 8th of May, 1858, to secure the payment of the sum of $700, *payable in one year from date*, and containing the usual clause, that if the mortgagee should at any time deem himself insecure, he was authorized to enter and take possession of said property, &c.

The piano was taken by the sheriff—the defendant, by virtue of an attachment issued out of the supreme court by Jaycox and Green, plaintiffs, against Matthew F. Walpole, defendant—June 29, 1858, and was sold on execution in the same case, December 8, 1858, before the mortgage debt became due, and before the mortgagee had reduced the property to possession. The mortgagee, although informed of the levy, did not demand the piano of the sheriff before the suit, nor did he claim to take it under the insecurity clause in the mortgage. The cause was referred to Hiram Crandall, Esq., referee, and was defended on the ground that Walpole had a possessory interest, which was subject to levy; the referee found for the plaintiff $75, for which judgment was entered. Defendant thereupon appealed to the general term.

HUNT and FRYER, *for appellant.*
W. WILLOUGHBY, *for respondent.*

By the court, W. F. ALLEN, Justice. By statute (2 *R. S.*, 366, § 20), when goods or chattels shall be pledged for the payment of money or the performance of any contract or agreement, the right or interest in such goods of the person making such pledge, may be sold on execution against him, and the purchaser shall acquire all the right and interest of the defendant, and shall be entitled to the possession of such goods and chattels on complying with the terms and conditions of the pledge. The revisers, in their note to this section, say : "It seems to be conceded (5 *J. R.*, 345 ; 4 *Cow.*, 469) that goods bailed or assigned cannot be sold, although the authorities leave the point open to much inquiry. It is submitted that the opportunity thus given to fraud, and to the injury of creditors, should be avoided. No possible evil is apprehended from extending the same principle which prevails here in relation to real estate, to personal property." (3 *R. S.*, 727, 2*d ed.*) The case in 5

*Johnson* (*Wilkes* agt. *Ferris*) decided that the resulting trust or residuary interest remaining to the assignor of personal property after the purposes of an assignment for the payment of debts are satisfied, is not such an interest as can be taken and sold on execution; and the case in 4 *Cowen* (*Marsh* agt. *Lawrence*) was to the effect that an equity of redemption in goods under a transfer, in the nature of a mortgage, could not be taken and sold on execution. Neither of these were cases of strict pledge, and yet from the language of the revisers, it would seem that they had it in view in reporting the section to remedy a supposed defect in the law resting upon these cases, or resulting from the principle there decided. Their idea was to extend to personal property the same principle which prevailed as to real estate. In this state, and under an act concerning judgments and executions, an equity of redemption in real estate could at that time, as it still may be, sold under an execution at law. (*Waters* agt. *Stewart*, 1 *C. C. in Er.*, 47; *Jackson* agt. *Town*, 4 *Cow.*, 601, *per* WCODWORTH, *J.*; 7 *id.*, 78.) As the law stood at the time of the revision, an equity of redemption, the mortgagee being in possession, a reversion and kindred interests might have been sold on execution. (*Per* GARDINER, *J.*; *Stief* agt. *Hart*, 1 *Comst.*, 32.) The term pledge applied to chattels in its strict sense, denotes a bailment or actual delivery of goods by a debtor to his creditor, to be kept till the debt is discharged. It is the delivery of a thing for the security of some engagement, and is distinguished from a mortgage, which is a grant or conveyance of the goods, and by it the whole legal title passes conditionally to the mortgagee. Pledge, in its proper sense, when applied to goods, does not comprehend a mortgage; but the reverse is not quite true, for a mortgage of goods is a pledge and more, for it is an absolute pledge, to become an absolute interest, if not redeemed at the specified time. (*Per* COWEN, *J.*, *Brown*, agt. *Bement*, 8 *J. R.*, 96.) As to real property a mortgage

might perhaps be more properly called a pledge.  A mortgage, as in use with us, is but *mortuum vadium* or a dead pledge.  (2 *Bl. Com.*, 157.)  Before actual forfeiture, when the property or chattels mortgaged become the absolute property of the mortgagee, and liable to execution for his debts, there is no reason why they, or the interests of the mortgagee in them, irrespective of the right of possession, should not be liable to execution against the mortgagor, which would not apply with equal force to pledges.  It is true that the revisers were, critically, accurate lawyers, and well understood not only the technical meaning of the words they employed, but the importance of using the right word in the right place, so that the strong presumption would be that by the word pledge, when used by them, was intended a bailment, a *strict* pledge, still there is much in the circumstances under which the section was enacted, and the reasons assigned for, and which induced its recommendation, as well as the absence of any well grounded reason for a distinction in the case between a pledge and a mortgage before forfeiture, upon which to base a plausable argument, that the revisers and legislature intended to include within the statute, and subject to sale on execution equities of redemption, reversions and kindred interests in goods and chattels.  Chancellor WALWORTH was of the opinion that it was intended by the statute to place the right to sell personal property mortgaged and continuing in the possession of the mortgagor, upon the same footing as real estate mortgaged, while it continued in the possession of the mortgagor ; and he supposed that most of the members of the court for the correction of errors were of the same opinion. (*Hanford* agt. *Artcher,* 4 *Hill,* 277.)  In *Randall* agt. *Cook* (17 *W. R.,* 53), Judge BRONSON was of the opinion that an action would not lie against an officer for a levy, by virtue of an execution upon personal property which has been mortgaged, and remains in the possession of the mortgagor, where the levy was made before

the mortgage became absolute, and for authority he referred to *Wheeler* agt. *McFarland* (10 *W. R.*, 318), which was the case of a levy upon goods under an execution against the owner, while they were in the possession of one having a lien for labor bestowed upon them; the learned judge making no distinction between the equity of redemption, in the case of a mortgage, and any other interest of like nature, and making no mention of any right in the mortgagor to possession of the goods for a definite period, as forming an element in the question, and necessary to constitute an interest subject to execution. The interest of a lessee of personal property may be sold on execution, and the purchaser will stand in the place of the lessee (*Van Antwerp* agt. *Newman*, 2 *Cow.*, 543), notwithstanding the title remains in the lessor. (*Hurd* agt. *West*, 7 *Cow.*, 756.) But the statute has received a construction, and doubtless the right construction, and it is well settled that the mortgagor of goods has no property in them subject to levy and sale on execution, unless he has a right to the possession of them for a definite time, and that a mortgagor in possession of a chattel after forfeiture, or when the mortgagee may take possession at his pleasure, has no interest which is the subject of sale on execution. (*Marsh* agt. *Lawrence*, 4 *Cow.*, 467.) It is equally well settled that a mortgagor of a chattel in possession, with the right of possession for a time certain, has an interest which may be sold on execution. (*McCracken* agt. *Luce, cited in Marsh* agt. *Lawrence, supra; Mattison* agt. *Baucus*, 1 *Comst.*, 295; *Hull* agt. *Carnly*, 1 *Kern.*, 501, *and cases cited.*) I only allude to the statute subjecting a pledgors interest in chattels to sale on execution, and the motives and decisions which led to its adoption, for the purpose of showing the leaning of legislation in favor of making every tangible and real interest, and right in personal property, liable to levy and sale on execution. The question in this case is, whether the plaintiff had the right, under the mortgage;

to the possession of the property at his pleasure, at the time of the levy and sale by the defendant, and this depends upon the true construction of the mortgage.

In *Warner* agt. *Munroe*, decided by this court in January last, we held and decided that the sheriff was not liable in an action of trover for levying upon and removing to a safe place goods in the possession of a mortgagor before default in the payment of the debt secured, and before any claim by the mortgagee to the possession of the goods, until a demand of the goods had been made by the mortgagee. In deciding this we necessarily held that until the mortgagee exercised the power vested in him, under the " danger clause " in the mortgage, by obtaining or claiming the possession, for the reason that he deemed himself insecure, the mortgagor had an interest in the property, which was the subject of levy upon execution. That the right of the mortgagee to the possession of the property did not depend upon his *mere pleasure*, but upon the fact of his deeming himself insecure, which fact could only be established by his acts. That from the time he deemed himself insecure, his right to the immediate possession became absolute, and could be asserted as against any person having the actual possession under the mortgagor, but that a party could not be made a wrong doer by relation and by the mental operations of the mortgagee. The causes for that decision were assigned in opinions written by Judge MULLIN, and need not be repeated here.

Without now referring in detail to all the cases bearing upon the question, most of which can be distinguished from this, I will, before remarking upon the construction of this mortgage, refer to one or two cases which more nearly resemble this in their circumstances. In *Stewart* agt. *Taylor* (7 *How.*, 251, *decided at special term by Judge* STRONG), there had been a sale of the mortgaged property without the assent of the mortgagee, and before he had taken possession, or the debt had become due; and it was held that

the sale was a conversion from which trover would lie. The judge did not consider, particularly the terms of the mortgage, but he treated it as containing no provision for the retaining of the possession of the property by the mortgagor for any time. The mortgage said nothing about possession, but was conditioned that in case of default in payment, the mortgagee might take the property and sell the same, which was considered as an authority to sell, and was consistent with the possession of the property by the mortgagee. He could, therefore, in virtue of his right of property, have taken possession of the goods at his pleasure. The condition was not like that in the mortgage in this action. The case of *Rich* agt. *Milk* (20 *Barb.*, 616) was an action against the assignee of the mortgagee, who had before the mortgage debt became due, taken possession of the property under a clause in the mortgage, providing that if default should be made in the payment, or if the mortgagee should at any time deem himself in danger of losing his debt by delaying the collection thereof until it became payable, he might take possession of the property at any time before or after the time limited for the payment of such debt, and sell the property, or so much thereof as should be necessary to satisfy the debt and reasonable expenses. The condition of that mortgage, it will be seen, was essentially different from that with which we have to do, and the court held that there was no restriction by implication upon the right of the mortgagee to take possession of the mortgaged chattels at any time during the running of the mortgage, and the decision of that case unnecessarily, as I think, was put upon that ground. But as I read the condition of that mortgage, the case is not in conflict with *Warner* agt. *Munroe*. In *Conkey* agt. *Hart* (14 *N. Y. R.*, 22) it was held by the court of appeals, where there was a provision in a chattel mortgage, that the mortgagor should remain in possession until default in payment, unless he or some other person should attempt to

sell, assign, remove or otherwise dispose of the property, that the seizure of the property before default on a distress warrant for rent due from the mortgagor, entitled the mortgagee to the immediate possession, and that after demand and refusal, replevin would lie against the bailiff for the wrongful detention. A demand appears to have been deemed necessary, notwithstanding the breach of the condition by which the mortgagor retained the possession, that notwithstanding the default by which the right of immediate possession became absolute in the mortgagee, a right of action against a person taking the property from the possession of the mortgagor by authority of law, would only accrue upon a demand by the mortgagee and a refusal to deliver. That was the case decided, and the court no where intimate that a demand was not necessary. But to the mortgage in this case. The legal effect of a mortgage is to vest in the mortgagee the entire legal title to the property mortgaged, subject only to be defeated by conditions subsequent, and in the absence of any provision to the contrary, that ownership carries with it the right to the immediate possession. (*Mattison* agt. *Baucus*, 1 *Comst.*, 295.) This right of possession incident to the ownership is the proper subject of an agreement between the parties, and the legal effect of the mortgage may, be restrained or modified by such agreement. The mortgage must be interpreted by the same rules which govern the construction of other contracts, and the intent of the parties, as declared in the mortgage, must be carried into effect, and in this, as in other cases, an agreement may be implied as well as expressed in terms. The provision in the mortgage is to the effect that in case of non-payment of the amount secured at the time limited for the payment thereof, then the mortgagee should have full power to enter upon the premises of the mortgagor, or any other place where the goods and chattels might be, to take possession of and sell the same, &c.; and in case the mortgagee should at any

time deem himself unsafe, it should be lawful for him to take possession of such property, and to sell the same, &c. The very terms of the mortgage, and the authority given to enter upon breach of the conditions on the premises of the mortgagor, and take possession of the property, clearly imply that until that time the goods were to remain in the possession of the mortgagor. Such is the clear understanding and intent of the parties as declared by the instrument. It is a general principle, applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument, is in judgment of law contained in it. (*Rogers* agt. *Kneeland*, 10 *W. R.*, 218.) Again, the parties having, by their agreement, specified in terms the contingencies, upon the happening of either of which the mortgagee may take possession of the goods, the right to take, except in the cases provided for, is necessarily prohibited, and the right which would otherwise have existed is restricted to the occasions expressly provided for, *expressio unius est exclusio alterius*, or as it is°otherwise worded, *expressum facit cessare tacitum*, is a maxim frequently resorted to in the interpretation of deeds and contracts, as well as statutes, and has particular reference to inferences of fact to be drawn from written documents or parol declarations. It means that if some, out of certain requisites, are expressly named, the inference is stronger that those omitted are intended to be excluded, than if none at all had been mentioned. (*Per* ALDERSON, *B.*, *Doe* agt. *Burdett*, 9 *A. & E.*, 936.) It was regarded by Lord DENMAN, C. J., as one of the first principles applicable to the construction of deeds. (*Line* agt. *Stephenson*, 5 *Bing. N. C.*, 183.) Implied covenants are in all cases controlled within the limits of an express covenant, and have, although the word " demise " in a lease implies a covenant for title, and for quiet enjoyment, yet both branches of such implied covenant are restrained by an express covenant for quiet enjoyment. (*Line* agt. *Stephenson*, *supra*; *Nolce's case*, 4

*Rep.*, 80 ; *Merrill* agt. *Frame*, 4 *Taunt.*, 329 ; *Deering* agt. *Farington*, 1 *Ld. Raym.*, 14.) For other applications of the maxim, see 5 *Rep.*, 97 ; *Hare* agt. *Horton*, 5 *B. & Ad.*, 715. In *Doe* agt. *Burdett* (7 *Scott N. R.*, 66) it was decided by the house of lords, reviewing the judgment in exchequer chamber (9 *A. & E.*, 936), that a general attestation to the execution of a power, without expressly stating the performance of the required formalities, was a good execution of the power, distinguishing the case from several in which the attestation clause, in terms, stated the performance of some of the required formalities, but was silent as to others, and in which consequently the power was held not to have been well executed, on the ground that legal reasoning would necessarily infer the non-performance of the others, but that a general attestation clause imputed an attesting of all the requisites. (*Wright* agt. *Wakefield*, 17 *Vesey*, 454 ; *Doe* agt. *Peach*, 2 *M. &. S.*, 576.) The legal effect of deeds and contracts may be restricted and limited by an express provision, or by implication resulting from an express provision. When the parties themselves make express provisions the reason for legal implication fails. A mortgage by law passes all the fixtures of shops, foundries and the like, on the land mortgaged ; but if the instrument enumerates a part, without words, distinctly referring to the residue, or requiring a construction which shall embrace the residue, no fixtures pass but those mentioned. (*Hare* agt. *Horton*, *supra*; 2 *Parsons on Contracts*, 27, 28.) So here the law would, if the parties had been silent, have given the mortgagee the right to take possession at his pleasure ; but as the parties have provided expressly for the taking of possession by the mortgagee upon certain contingencies, the right to take possession upon any other event is necessarily excluded, and the mortgagor had the legal right to the possession until by the terms of the mortgage the mortgagee became entitled. This, if I am right, but for right of the mortgagee to take possession upon

deeming himself insecure, would clearly give the mortgagor the right of possession of the goods for a time certain, and render them liable to the execution for his debts. (*Hull* agt. *Carnley*, *supra*.) In *Warner* agt. *Munroe*, we held that this claim did not vary the legal rights of the parties, and render a party taking the goods by authority of the mortgagee, or upon process against him, liable as a trespasser. For the reason then assigned, I am of the opinion that the defendant is not liable to this action for taking and selling the goods or the property of the mortgagee, before default in the payment of the mortgage debt, and while the mortgagor remained in possession, before the mortgagee made any claim to them.

The judgment must be reversed and a new trial granted, costs to abide event.