THOMAS W. EVANS ET AL. v. WILLIAM J. WALSH.

A tax warrant issued and delivered to the collector before a *fi. fa.* is delivered to the sheriff, but not levied until after the levy under the *fi. fa.*, shall have priority over it.

On rule to show cause. The facts appear fully in the opinion.

Argued at February Term, 1879, before Justices VAN SYCKEL, KNAPP and DIXON.

For Mr. Evans, *W. J. Magie.*

For the assignee, *B. A. Vail.*

For the city of Rahway, *L. Lupton.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is a contest for priority between three creditors of William J. Walsh.

Evans obtained judgment by confession against Walsh, October 18th, 1878, upon which execution was issued and levy made upon the personal property of the defendant October 25th, 1878.

The city of Rahway caused a tax warrant to be issued for

unpaid taxes against Walsh, on the 14th day of October, 1878, by virtue of which the receiver of taxes levied on the same personal property which had been taken under the *fi. fa.* in favor of Evans, after the *fi. fa.* had been levied.

On the 18th of November, 1878, Walsh made an assignment of his property under our statute, for the equal benefit of his creditors.

On behalf of the assignee of Walsh, it is insisted that the judgment of Evans is void by the first section of the act respecting assignments, (*Rev., p.* 36,) because it·was confessed in contemplation of the assignment.

This section received a construction in the case of *Garretson* v. *Brown,* 2 *Dutcher* 425, in which Justice Potts, in delivering the opinion of the court, said that " the inference from the language of the act is not that a judgment confessed for the purpose of preferring a creditor is to be deemed fraudulent and void, but that the preference of such a judgment in the deed shall be deemed a fraud, and shall avoid the deed."

If a different view should be taken of this statute, the assignee could not prevail, because he has failed to show either that the judgment was confessed in contemplation of the assignment, or that Evans knew that the assignment was contemplated. All that Walsh says is that he intended to prefer Evans by the judgment, not that he intended to make an assignment at the time the judgment was confessed. The testimony of Ward, as to the declarations made by Walsh after the entry of the Evans judgment, is not competent against Evans.

This narrows the conflict to the question whether a tax warrant issued and delivered to the collector before a *fi. fa.* is delivered to the sheriff, but not levied until after the levy under the *fi. fa.*, shall have priority over it.

No preference can be claimed for the state, or for municipal corporations, over other creditors since the decision of the Court of Appeals in *Freeholders of Middlesex* v. *State Bank at New Brunswick,* 3 *Stew.* 311, in which it was held that the state does not possess the crown's common law prerogative

to have its debts paid in preference to the debts of other creditors.

The writ of *extent* by which debts due the crown were collected, and the *levari facias* by which taxes were made, prevailed over the subject's execution, unless the property levied on was actually sold before the teste of the king's writ, only by reason of the royal prerogative which entitled the crown debt to preference. *Rex* v. *Wells*, 16 *East* 278; *Brassey* v. *Dawson*, 2 *Strange* 978; *Giles* v. *Grover*, 9 *Bing.* 128; *Hutchinson* v. *Johnston*, 1 *T. R.* 729; *Butler* v. *Butler*, 1 *East* 338; 2 *Tidd's Pr.* 1053.

The question at issue must, therefore, be determined according to the rule which applies between ordinary creditors.

The tax warrant was delivered to the city collector before the Evans execution was delivered to the sheriff. The sheriff made the first levy, but before he sold under the execution the property was levied on by virtue of the tax warrant.

At common law the *fieri facias* had relation to its teste, and bound the defendant's goods from that time, so that if the defendant afterwards sold the goods, though to a *bona fide* purchaser for value, they were still liable to be taken in execution, unless sold in market overt.

To remedy this mischief, the statute 29 *Charles II., c.* 3, § 16, was passed, of which our statute (*Rev., p.* 392, § 18,) is substantially a copy.

This statute did not contain the provision in the twentieth section of our statute, which protects *bona fide* purchasers from the defendant in execution, before actual levy.

Whether, as between two execution creditors, the lien of the execution attaches upon personal property from the levy, or from the time of the delivery of the writs to the officer, is a question which has not been adjudicated in this state.

Under the construction given to the English statute, the sense in which, and the extent to which, goods are said to be bound by the delivery of the writ, is that it binds the property as against the defendant himself, and all claiming under him, but it does not so vest the property in the goods as to

defeat the title acquired by the purchaser at a sale thereof, made by the sheriff under an execution subsequently delivered but first levied and executed upon the property.

In *Smallcomb* v. *Cross*, 1 *Ld. Raym.* 251, it was resolved by all the judges that if two writs of execution are delivered to the sheriff the same day, he has not an election to execute which he pleases, but he must execute that which was first delivered. But if the sheriff levies goods in execution, by virtue of the writ last delivered, and makes sale of them, the property of the goods is bound by the sale.

In *Hutchinson* v. *Johnston*, 1 *T. R.* 729, Ashhurst, Justice, says : " The general principle of law, which has not been contradicted by any of the cases cited, is that the person whose writ is first delivered to the sheriff is entitled to priority, and that the goods of the party are bound by the delivery of the writ. But the legislature saw the inconvenience and hardship which would fall upon innocent purchasers if the vendee of the second writ were liable to be dispossessed of the goods which he had *bona fide* bought, and therefore they guarded against it by the statute." In this case it was held that the execution first delivered must have priority, although the seizure was first made under the subsequent execution.

In commenting upon Smallcomb *v.* Cross, in the case of *Payne* v. *Drewe*, 4 *East* 523, Lord Ellenborough says : " The sense in which, and the extent to which, goods are said to be bound by the delivery of the *fi. fa.*, is that it binds the property as against the party himself, and all claiming under him, but does not so vest the property in the goods as to defeat the effect of a sale made by the sheriff under an execution subsequently delivered ;" and approving of the declaration of Lord Hardwicke that neither before the statute, nor since, is the property of the goods altered, but continues in the defendant until execution executed, he declares that where there are several authorities equally competent to bind the goods of a party when executed by the proper officer, that they shall be considered as effectually and for all purposes bound by the

authority which first actually attaches upon them in point of execution, and under which an execution shall have been first executed. Lord Ellenborough admitted that the case of Hutchinson v. Johnston seemed to be against his view, and he attempted to distinguish it by saying that, in that case, both writs were delivered to the same officer, while in the case before him the writs were delivered to different officers. The declaration in Hutchinson v. Johnston was not necessarily involved in Payne v. Drew, nor was the question made which execution would have been entitled to the fruits of the sale. The case was this: a sequestration issued out of chancery, and was not executed for eighteen months, and after that time a *fi. fa.* was delivered to the sheriff, under which he seized the defendant's goods, and then receiving notice of the sequestration, the sheriff returned the *fi. fa. nulla bona.* An action was instituted against the sheriff for a false return, and the suit was properly maintained.

The English cases sustain the title of the purchaser at the sale under the execution which is first levied, on the ground stated by Chief Justice Holt, "that sales made by the sheriff ought not to be defeated, for if they are, no man will buy goods levied upon a writ of execution," but there is no case which my research has found in which it has been held that the fund arising from the sale must be applied to the writ last delivered, because it is first levied.

The sale under a *fi. fa.* was evidently regarded as equivalent to a sale in market overt.

Archbold states the law to be that where two executions are delivered to the sheriff, and he, contrary to his duty, executes the second writ first, the sale will be valid, but where he merely seizes under the second execution, and then, before any sale is actually made of the defendant's property, seizes under the first, the first writ shall have priority. 1 *Archbold's Pr.* 285.

In *Rex* v. *Wells*, 16 *East* 278, the property was held to be so far bound by the delivery of the writ that as between subject and subject the question of priority is determined, but as

against the crown it is not bound at all so as to defeat an *extent.*

In *Giles* v. *Grover* 1 *Cl. & Fin.* 72, Justice Patteson, in his assertion "that Lord Kenyon was mistaken in saying that as between conflicting executions priority was to be determined by the order of their delivery to the officer," misapprehended both Payne *v.* Drewe and Smallcomb *v.* Cross, which he cited in his support, for in neither of those cases was the question necessarily involved whether the court would appropriate the proceeds of sale to the writ first delivered, or which writ as between the execution creditors themselves was entitled to priority in payment.    This was one of the cases in which the English court manifested a strong disposition to maintain the royal prerogative, and the decision of the case in favor of the crown has ever since been followed.    In the same case (Giles *v.* Grover) Justice Alderson cites Hutchinson *v.* Johnston, with approbation, and says that Rybot *v.* Peckham, referred to in the note to 1 *East* 731, is an express authority to the same effect ; he also declares that prior to the statute of frauds, if a subject's writ of execution had come to the sheriff after seizure, but before sale, under a writ of a subsequent teste, the sheriff would have been justified in executing it before the other writ under which he had seized, and would have been liable to an action on the case if he had omitted to do so. The only question in the case was when a *fi. fa.* was so completely executed as to prevent an *extent* from overreaching it, and Justice Patteson was speaking with reference to such full and complete execution as would alter the title to property so as to defeat the operation of an *extent.*

In *Jones* v. *Atherton,* 7 *Taunt.* 56, it was expressly decided that though a sheriff make a seizure of goods under a *fieri facias* last delivered to him, yet the plaintiff in a *fi. fa.* first delivered is entitled to be first satisfied out of the fruits of such seizure.

In *Field* v. *Milburn,* 9 *Mo.* 492, the English cases I have referred to are cited in support of the declaration that, as between execution creditors, it is not the date of the execution

nor its delivery to the officer, but the date of the levy, which gives priority of lien, and the Court of Appeals of Kentucky, in *Tabb* v. *Harris*, 4 *Bibb* 29, said that the inference from these cases was strong that this view was correct. The English cases, however, I think, establish nothing beyond the proposition that if the goods are first seized and sold by the officer under a junior execution, the purchaser will acquire a good title, and that, unless the goods are actually sold under the last writ before the first writ is levied, the writ first delivered must be first satisfied. So Lord Chief Justice Tindall understood the cases, in his opinion in *Giles* v. *Grover*, 1 *Cl. & Fin.* 199.

This rule, which was strongly adhered to by the English courts to protect *bona fide* purchasers at judicial sales, is not inconsistent with the right of the plaintiff in the senior writ to have his debt first satisfied in the distribution of the fruits of sale.

This view was adopted in New York, where the statute of Charles II. is re-enacted, in *Lambert* v. *Paulding*, 18 *Johns.* 311. The execution first delivered was held to be entitled to the proceeds of the sale of chattels made under a subsequent execution by virtue of which they were first levied upon, although, as stated in the later case of *Marsh* v. *Lawrence*, 4 *Cow.* 461, this remedy would fail, and the first execution creditor would be left to his action alone against the sheriff for negligence, if the money was paid over to the junior execution creditor before application to the court to make an appropriation of the proceeds of sale.

The courts in Missouri and Kentucky argued that the plaintiff who procured the first levy to be made should have the benefit of his diligence, but the force of that argument is not apparent when it is considered that the plaintiff can do nothing after he has delivered his writ. He should not suffer from lack of diligence in an officer over whom he exercises no control.

So far as any expression of opinion has been given in our own courts on this subject, the inference is strong that the

writ first delivered is entitled to priority of payment, provided it is levied before its return.

The law is clearly stated by Justice Drake, in *Lloyd* v. *Wyckoff*, 6 *Halst.* 218: "A general or special property in goods is necessary in order to maintain the action of trover. Does the mere delivery of an execution vest that special property, or must there be also a levy for this purpose? The goods are said to be bound from the delivery of the writ. But how bound? Not so as to make a levy unnecessary, but so as to enable the sheriff, at any time before the return of the writ, to levy on them to satisfy his writ. By the receipt of the writ the goods become so far bound as to enable him by proper diligence to acquire a special property, but it is the service of the writ by which that special property becomes vested in him. By the common law the goods were bound from the teste. By the statute, that binding (as far as respects *bona fide* purchasers) is delayed until delivery, but neither before the statute nor since is the property of the goods altered, but continues in the defendant in execution until the execution is executed. The lien of the writ will continue only until the return of the writ."

It is by reason of the peculiar nature of the lien acquired by the mere delivery of an execution, that it follows that the sheriff has no such special property until actual levy and inventory as will enable him to maintain trover. The lien acquired by the delivery is inchoate, and becomes perfected by actual levy. If no levy is made before the return of the writ, the goods of the defendant are free from its burden, either in the hands of a purchaser with notice, or as to subsequent execution creditors. But if the levy is made, the lien dates from the delivery of the writ so as to maintain its rank against all intermediate encumbrances. Therefore no such title vests in the sheriff by mere delivery of the writ as will maintain trover, for it may be that he will not pursue and perfect his right by making a levy, but when the levy is duly made the writ binds the property by the doctrine of relation from its delivery.

In *Moses* v. *Thomas*, 2 *Dutcher* 124, the sheriff, holding a *fi. fa.*, made a levy upon part of the defendant's goods, and afterwards, before the writ was returnable, levied upon other goods, and his title to the latter goods was held to be paramount to that of an assignee under an assignment made prior to the second levy. Justice Elmer said, " that no rule of law forbid the sheriff from seizing part of the goods at one time and part at another. By the common law a *fi. fa.* bound the property from its teste. Under our statute it binds the property from the time it is delivered to the sheriff; the writ was delivered to the sheriff long before the date of the assignment, and bound all the property the defendant had at any time before the return day."

In *Clement* v. *Kaighn*, 2 *McCarter* 47, where the question was, which of two rival executions should have priority as against real estate, Chancellor Green, in commenting upon the tenth section of the act of December 2d, 1742, (1 *Nevill* 279) which directs that where there are sundry writs for the sale of real estate, such priority shall be given as the law gives in case of executions against personal estate, said, " that then as now executions bound personal estate from the time of the delivery thereof to the sheriff."

Judges of such eminent ability and accurate knowledge of the common law would not have asserted so broadly that the execution binds from its delivery, if, as between conflicting executions, no lien is acquired by delivery to the officer.

Chief Justice Hornblower did not so understand the rule, for in *Richards* v. *Morris Canal and Banking Co., Spenc.* 136, where the execution first delivered had been stayed by rule of court before it was levied, he gave it priority of payment out of the moneys made under a subsequent writ, saying that the execution, though not levied, continued to be a lien upon the property until it was sold, and that the lien followed the proceeds into the sheriff's hands.

In *James* v. *Burnet, Spenc.* 635, Justice Whitehead says, " the goods of a defendant in execution are bound from the

delivery of the writ to the sheriff, and continued up to the time of the levy."

· With such a continuing lien, and the duty resting on the officer to make the levy, it seems difficult to perceive upon what rule of construction it can be held that the lien may be defeated by a junior execution securing the prior levy. The natural and reasonable interpretation of the language of our statute is in favor of the earlier writ. Our courts have uniformly said that the execution binds personalty from the time of its delivery, and if so, in what way does a subsequent execution displace that lien? There is nothing in the language of our statute to justify such a result.

The clause at the close of the eighteenth section, which was not in the statute of Charles II., enforces this view: " If two or more writs of execution shall be delivered against the goods of the same person on the same day, that which was first delivered shall be first executed and satisfied." This manifests a clear intention that the lien acquired by delivery shall prevail between two executions delivered on the same day, and there is an absence of all indication of a purpose to apply a different rule as to executions delivered on different days.

An intention to make the actual levy the test between rival executions would have been expressed as it was in the case of executions issued out of the court of small causes by the sixty-sixth section of that act.

This controversy will therefore turn upon the question whether the same rule applies between an execution in the sheriff's hands and a tax warrant. Does the delivery of the tax warrant bind the property if followed by a levy? If it does, the tax warrant should, in the distribution of the fund now in court, be first satisfied.

No question is made as to the title of the purchaser at the sheriff's sale. The tax collector claims that in the equitable appropriation of the proceeds of sale, the court must regard the prior lien of his writ.

The tax warrant is the means provided by law for the col-

lection of the revenue due to the state, as well as that which is to be applied to the maintenance of the local government, and it is reasonable to presume that it was intended that. it should have at least the virtue and efficiency of an execution by which the claims of an individual are enforced. Giving it that force, it is not necessary to consider whether it is within the operation of the eighteenth section of the act respecting executions, because it was delivered before the rival execution reached the sheriff's hands. While the doctrine has been established in this state, that it has not so far succeeded to all the prerogatives of the British crown, that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury, it would be an unfair discrimination against the state to hold that the writ which the legislature has provided to enforce the payment of the duties essential to the support of its government, shall not have the force and incidents which belong to the ordinary process provided for the citizen.

The tax warrant, being the execution provided to enforce the payment of the public revenue, should, in the absence of any language in the tax law evincing an intention to impair its efficiency, be accorded the force of an execution in ordinary cases. This will entitle it to be declared a lien upon the personal property of the defendant within the city of Rahway from the time at least of its delivery to the officer, and that lien having been perfected by a levy according to the command of the warrant, before the sale under the sheriff's execution, the public duty should be satisfied before the payment of the sheriff's execution.

Public policy requires this construction of the law.

If the tax warrant acquires no lien until it is levied, its usefulness will be greatly impaired, and its purpose in many cases defeated. In a populous district, where it issues against a great number of persons, it would require so much time to make a levy in each case that many executions would unavoidably intervene to deprive the public of its revenue.

It would be a race between the tax collector and the vari-

ous officers to whom executions are delivered, in which the former would be placed at great disadvantage.

It could not have been the legislative design to create an agency so feeble for a purpose so vital.

Mr. Burroughs in his work on Taxation (p. 256) says that whether there be a tax warrant placed in the hands of the collector or the tax list is merely delivered to him, when it is in his hands in the mode pointed out by the statutes of the state, it has all the force of an execution issued from a court upon a judgment regularly obtained.

In *Sheldon* v. *Van Buskirk*, 2 *N. Y.* 473, it was held that the collector, under his tax warrant, had the power to sell which he would have had under an execution, in the absence of any statutory prohibition.

The liability imposed upon the collector for the taxes ordered to be made by his warrant, by section twenty-three of the tax law, (*Rev., p.* 1144,) shows that the legislature did not intend to arm the officer with a process which would leave him impotent to discharge the duty imposed upon him.

My conclusion is that the tax is entitled to priority in payment.