OPINION of the Court, by
Judge Gwsxey.
The sheriff of Madison county, haring in hi? possession two writs of fieri facias against the estate ofHigeson Grubbs, one of which was in favor of the plaintiff Tabb> and bore date 20th April 1813, and was delivered to the sheriff the same date ; the other was in favor of the defendant Harris, and bore daté the 28th of April 1813, and was delivered to the sheriff the 29th of April 1813; took such of the estate of Grubbs as could be found, and made sale thereof; hut the proceeds of the sale not being sufficient to satisfy both executions, and each of the plaintiffs in the execution claiming the money, the Sheriff'brought it into court, and both Tabb and Harris appeared, and waived all exceptions to the mode of proceeding, and desired the decision of the court to whom the money should he paid; and it further appearing to the court that Harris, previously to the date of the feri facias .which issued in favor of Tabb, had other writs offeri facias issued upon his judgment, which had also prior to that time been returned not satisfied, in consequence of no property being found, the court were of opinion that.the execution of Harris was entitled‘to the preference, and made them determination accordingly. To *30 reverse this decision of that court Tabb has prosecuted; w*‘it of error with supersedeas.
Before we examine the correctness of the decision of the court below, it may not be improper to remark, that there exists no circumstances in this case from which the slightest imputation of fraud can attach to either of the parties and although the defendant Harris had no execution in the hands of the sheriff' when that of the plaintiff Tabb was delivered, yet he appears to have been honestly endeavoring to coerce the collection of his demand.
The question, therefore, which the parties appear to have intended to make, and which the record now presents for our determination, seems to be, should a sheriff, regardless of all prior executions not then in hand, satisfy that first which is in hand when the levy is made, and which came to Iris hands prior to any other then inf his possession ?
The decision of the court below must have been made upon the supposition that the first execution which issued in favor of Harris, created a lien upon the estate of Grubbs, not only as against Grubbs and purchasers under him, but as respects all other plaintiffs, and that that lien w as preserved and continued by the various intermediate executions which had been issued and returned in favor of Harris.
This position cannot, however, either according to the principles of the common law or under the statute concerning executions, be maintained. The common law, regardful of the interest of plaintiffs, and to preserve it against the fraudulent acts of defendants in alienating their goods, made writs of execution have relation to their teste, and bind the estate of defendants from that time; so that if they should sell their goods thereafter, they might be taken in execution in whose hands soever they might come, But as between plaintiffs in execution, the common law knew no partiality, and created no lien in favor of one in prej udice to that of another. It is true, sheriffs were bound by the duties of their office to maintain the utmost impartiality between plaintiffs, and as the wit of fi. fa, formed a sufficient authority, for him to act, it became his duty, when several should be received in Savor of different plaintiffs against the estate of the same defendant,- to evince that impartiality by satisfying that writ first which.had been first received ; *31 add for á failure to do so, the sheriff was field guilty of a breach of his official duty, and made liable to the action of the plaintiff whose execution had been first received.
This rule of the common law' requiring sheriffs to satisfy that execution first which first came to hand, wras not produced by any lien which the law created in favor of the first execution, but as being better calculated to prevent any improper management between the sheriff and other creditors, to the prejudice of the plaintiff in the first execution, and as tending more certainly to preserve good faith and impartiality on the part of the officer. The application of the ride must, how ever, be confined to those executions in the hands of the sheriff wrhen the levy is maide : for as tlse sheriff derives his authority from the writ then in hand, it would be preposterous in the extreme, to make it his duty to apply the proceeds of the sale to an execution not then in hand, and which from the lapse of time since in hand, lias become entirely exfjinct.
If thenijwe are correct in supposing that no lien exist-i ed at the common law, on the goods of a defendant, in favor of 6ne plaintiff in execution, in exclusion to another, it becomes proper wo should inquire wffietlier there exists any statutory provision changing the common law in this respect ?
The only statute which has any bearing on this question, is that of If 96, concerning executions. The 8th section of that statute (1 Litt. 540) provides that no writ of fieri facias, or other writ of execution, shall bind the property of the goods, &c. against which such writ issued, but from the time such writ shall be delivered to the sheriff or other officer to be executed. It is obvious from the phraseology of this section of the statute, that the legislature did not intend writs of fieri facias, which might thereafter issue, should have a more extensive binding efficacy than they had at common law ; but that the object in passing it was to prevent the mischiefs which frequently resulted to purchasers under that rule of the common law giving writs > of execution relation to their teste, and to prevent.those writs from binding the estate until they should be actually delivered to the sheriff.
The English courts, in giving an exposition to their statute, similar in its provisions to that of ours, hate *32 Uniform!)' considered it as operating only to preclude the defendant fr'om so disposing of his estate as to prevent it from being taken in execution. But np case, either before or Since the statute, can be found, where it has ever been held that as between different plaintiffs a lien has been created by the delivery of the execution. The contrary is, however, strongly to he inferred from various adjudged cases since the passage of the English statute. —-See, Salk. 320 — ~Ld. Ray. 251 — -6 Bac. title Sheriff, letter N. ,
As* therefore, there was no lien preserved by the executions which first issued in favor of Harris, and which Were not in hand when Talvb’s was received, that of Tahb’s ought to have been first satisfied ; árl the court consequently erredin not so deciding. ; -
The decree of that court must be reversed with costa;