BURNHAM, HANNA, MUNGER & CO., v. THOMAS J. DICK-SON, THE CONSOLIDATED STEEL AND WIRE CO., AND THE WICHITA PLUMB AND PUMP CO.

ATTACHMENT—*Execution—Priority*. On the twenty-sixth day of July, 1894, the consolidated Steel and Wire company *et al.*, had executions issued out of the probate court of Kay county upon judgments rendered therein, and delivered to the under sheriff of Kay county at 3:30 o'clock p. m., on said day. At half-past 4 o'clock the plaintiff in error caused a writ of attachment to issue out of the district court of Kay county, and an effort was made by the attaching creditor to find the sheriff at his office in the county for the purpose of placing the attachment in his hands, and failing in that the attaching creditor placed the writ in the hands of Crouse, a deputy sheriff of the county. The attachment was levied upon a stock of hardware belonging to the defendant, Dickson, in the town of Kildare, in Kay county, at sixteen minutes past 5 o'clock of the same day. The executions were levied upon the same stock of hardware at 5:30 o'clock of the same afternoon. *Held:* That the attaching creditor is entitled to the priority by reason of having secured the first levy and possession of the property.

*Error from the District Court of Kay County.*

### STATEMENT OF FACTS.

On the twenty-sixth day of July, 1894, the plaintiffs in error obtained a writ of attachment against the property of the defendant, Dickson, in the district court of Kay county. The attachment was issued at 4:30 o'clock in the afternoon, and was levied upon a stock of hardware in the town of Kildare at 5:16 o'clock of the same day by Crouse, a deputy sheriff. On the same day the interpleaders had executions issued out of the probate court of Kay county upon judgments rendered therein against the defendant, Dickson.

These executions were delivered to Mr. Harwood, under sheriff of the county, at the office of the sheriff in New-kirk, the county seat, at 3:30 o'clock P. M. on said day,

but were not levied until after the writ of attachment had been actually levied upon the property of the defendant, Dickson. The writ of attachment was delivered by the clerk of the district court to the attorney of the plaintiffs in error immediately after its issuance at 4:30 o'clock of the afternoon, and thereupon, Miller, the agent of the plaintiffs in error, went to the office of the sheriff of said county for the purpose of delivering the writ of attachment into the hands of the sheriff at that time and place, but found the office entirely vacant, and thereupon, the attorney of the plaintiffs in error took the writ of attachment himself to the town of Kildare, a distance of four and a half miles from Newkirk, starting at about the time the under sheriff, Harwood, started with the executions.

The attorney of the plaintiffs in error reached the town of Kildare about fifteen minutes before the arrival of the under sheriff, Harwood, and delivered the writ of attachment to Crouse, the deputy sheriff of the county, at 5:05 P. M., the attorney of the plaintiffs in error having prearranged with the deputy sheriff to be at that place for that purpose.

The writ of attachment was levied upon the property of the defendant, Dickson, at 5:16 o'clock P. M., and the executions were levied at 5:30 o'clock P. M., upon the same property. Afterwards the property upon which the executions had been levied was by the sheriff sold, under the executions, and the proceeds in money are now in the hands of the sheriff of said county.

*Green & Strang*, for plaintiffs in error.

*O'Bryan & Gordon*, for defendants in error.

8—v.

The opinion of the court was delivered by

McATEE, J.:    The only question for solution is one of priority.    Are the interpleaders, the Consolidated Steel and Wire company and the Wichita Plumb and Pump company, whose executions were issued upon judgments in the probate court and senior in the sense that they came into the hands of the under sheriff, Harwood, prior to the time that the attachment issued out of the district court was placed in the hands of the deputy sheriff, Crouse, entitled to the proceeds?

It is provided in the Code of Civil Procedure, § 4074, p. 793, of the Statutes of Oklahoma, 1893, that:

"Where there are several orders of attachment against the same defendant, they shall be executed in the order in which they are received by the sheriff."

If the question here for determination was one between writs of attachment, there would be no difficulty, nor would any difficulty arise if the question lay between writs of execution, since it is provided in the Code of Civil Procedure, § 4336, p. 836, that:

"All real estate not bound by the lien of the judgment as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution."

By § 4339, that:

*    *    *    "In all other cases, the writ of execution first delivered to the officer shall be first satisfied."

It is no where provided in the statutes of the territory what the duty of the sheriff shall be, nor what the rights of execution and attachment creditors shall be, in a case like the present, where the contention is not between attachments issued out of the same court, nor between executions issued out of the same court, but between executions issued out of the probate court and finding their way first into the hands of the sheriff, and a writ of

attachment issued out of the district court subsequently, and levied upon the property prior to the time of the levy of the executions, and the questions therefore to be determined are, what is the rule of the common law, since in the absence of statutory direction otherwise, it is provided by § 3874 of the Code of Civil Procedure, that:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma."

Under the statutes of this territory, attachment takes effect from the time that it is executed by the sheriff by his going "to the place where the defendant's property may be found, and declaring that, by virtue of said order, he attaches said property at the suit of the plaintiff." (Section 4075, Code of Civil Procedure).

And the levy of the execution is effectual only "from the time they (that is, the goods and chattels) shall be seized in execution."

"By a leading case on this subject, (*Payne v. Drew*, 4 East. 545), it was held, 'that where there are several authorities competent to bind the goods of the party when executed by the proper officer, that they should be considered as effectually and for all purposes bound by the authority which first actually attaches upon them in point of execution, and under which an execution shall have been first executed.' The correctness of this principle has been recognized by the supreme court of North Carolina, in the case of *Jones v. Judkins*, 3 Devereaux & Beatty's R. 456. Also by the court of appeals in Kentucky, who say, in *Kibby v. Higgins*, 3 J. J. Marsh, 212, 'As between execution creditors, it is not the date of the execution nor of its delivery to the officer, but the date of the levy which gives priority of lien,' and the court there refers to the case of *Tabb v. Harris*, 4 Bibb 29

and the authorities there cited. The court proceeds to say, 'We not only admit the authority of these cases, but approve them as rational and just. The only object of attaching a lien to an execution, is to prevent the debtor from defeating the creditor by alienating or embarrassing his estate. The reason of the law in such a case does not apply to a competition between execution creditors, and *cessante ratione cessat lex.*' Moreover, it is but sheer justice to give the preference to the creditor, who, by his superior industry and vigilance, shall have procured the first levy on the debtor's estate." (*Field v. Milburn*, 9 Mo. Reps. 488).

We find this reasoning confirmed in *Johnson v. Gorman*, 6 Cal. 195, in which it was held that the execution first levied must be first satisfied, though there was an elder execution in the hands of the same officer.

Since in the jurisdiction of that court no statute had at that time required that "the writ of execution first delivered to the officer shall be first satisfied," the reasoning is applicable to the facts in this case, in the absensce of any statute directing what the duty of the sheriff shall be, or what the rights of the creditors are as between a writ of attachment coming into his hands from the district court, after a writ of execution had been placed in his hands from the probate court, and it turned out without fraud or complicity, but simply superior diligence on the part of the attaching creditor, that the attachment was first served.

The fact that under our statute personal property is only bound from the time of the actual levy of an execution or an attachment, renders the decision of the supreme court of California applicable.

But the question of diverse jurisdictions remains. The question is one between the jurisdiction of the probate court and the jurisdiction of the district court.

A similar question was passed upon in the case of *Hazen v. Lucas*, 10 Peters, p. 400, with this difference, that an execution was issued out of the district court of the United States and placed in the hands of the marshal who sought to levy the first execution upon the property which had been theretofore seized by the sheriff of the state under an execution upon a judgment in the district court of Alabama.

It was there said by the supreme court, that:

"The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other.  *    *    * And where a sheriff has made a levy, and afterward receives executions against the same defendant, he may appropriate any surplus that shall remain, after satisfying the first levy, by the order of the court.

"But the same rule does not govern where the executions, as in the present case, issue from different jurisdictions.  *    *    *    *    *    *    *    *

"A most injurious conflict of authority would be likely, often, to arise between the federal and state courts, if the final process of the one could be levied on property which had been taken by the process of the other.  * *    * Property once levied upon, remains in the custody of the law, and it is not liable to be taken by another execution in the hands of a different officer; and especially by an officer acting under a different jurisdiction."

And it was said by the supreme court of the United States, in the case of *Freeman v. Howe*, 24 How. 450, that;

"In the case of conflicting authorities under a state and federal process, on which property has been seized, the question as to which authority shall for the time prevail, does not depend upon the rights of the respective parties to the property seized, but upon the question,

which jurisdiction had first attached by the seizure and custody of the property under its process."

While, under our statute, therefore, the sheriff is in this proceeding the executive officer of the probate court, as also of the district court, yet, since the statute has made no provision requiring a priority to be reserved as between writs of execution and writs of attachment, and since the statute does fix the right of the property in the creditor who has procured the first seizure of it under his process, and inasmuch as the process of attachment and that of execution have issued out of different courts, and any other holding might lead to the conflict of jurisdiction between the final order of one court and the final order of the other, and inasmuch as it does not appear, nor is it averred, that the sheriff was in anywise interested in the matter except to discharge his duty, we think that the rule of the common law should be obeyed which has been asserted in the cases hereinbefore recited, and that the jurisdiction which has first attached by a seizure of the property shall prevail.

The judgment of the district court will, therefore, be reversed and the cause remanded.

Bierer, J., having presided in the court below, not sitting; all the other Justices concurring.